PETER C. SCHUYLER, Respondent, *v.* DAVID D. SMITH et al., Appellants.

51   309
123   318

51   309
127   182

Where a tenant for one or more years holds over after the expiration of his term, the landlord has the option to treat him as a trespasser or as a tenant for another year upon the terms of the prior lease, so far as applicable, and the right of the landlord to elect to continue the tenancy is not affected by the fact that the tenant has refused to renew the lease, and has given notice that he has hired other premises. It is not in the power of the tenant alone to throw off the character thus imposed upon him.

A referee has power to give judgment for the plaintiff upon the pleadings where the answer does not contain facts constituting a defence. *Jones* v. *Shears* (4 A. & E., 832) questioned.

(Argued September 21, 1872; decided January term, 1873.)

APPEAL from the judgment of the General Term of the Supreme Court in the first judicial district, affirming a judgment in favor of plaintiff, entered upon the report of a referee.

This was an action to recover rent. The complaint stated "that in or about the month of April, 1863, by an agreement made and entered into between the plaintiff and the defendants, the plaintiff let and rented unto the defendants, and the defendants hired and took from the plaintiff a certain dock or wharf, and a lot of land adjacent thereto, lying and situate

in the town of Yonkers, county of Westchester, for the term of one year from the first day of May, 1863, at the yearly rent of $500, payable in equal quarterly payments on the first day of August, November, February and May thence following, and that said defendants agreed thereby to pay said rent as aforesaid.

"That said defendants entered into the possession and occupation of said premises pursuant to said agreement.

"That after the first day of May, 1864, said defendants continued and remained in the possession and occupation of said premises, whereby they elected to continue their said tenancy for another year, commencing on the first day of May, 1864, upon the same terms and at the same rent, and payable as in and by said agreement was provided for and agreed to," and claimed judgment for the first two quarters' rent.

The defendants answered the complaint as follows:

"The above-named defendants, for answer to the complaint in this action, deny each and every allegation thereof, except as hereinafter admitted or stated.

And, further answering the defendants, say they admit that, in or about the month of April, 1863, by an agreement made and entered into between the plaintiff and defendants, the plaintiff let and rented unto them, and that they hired and took from him the premises mentioned in said complaint, for the term of one year from May 1st, 1863, at the yearly rent of $500, payable at the time and in the manner stated in said complaint; that, at the time of making such agreement, they were in the possession and occupation of said premises, under a prior letting to them by the plaintiff; that for several years immediately prior to said first day of May, 1863, the defendants had used and occupied said premises as a steamboat landing for passengers and freight, under terms of one year each, created or fixed by a separate agreement in respect to each term made by and between them as tenants, and the plaintiff as landlord; that under the above mentioned agreement, made in the month of April, for another term of one

year, commencing May 1st, 1863, they continued to use and occupy said premises for said term as a steamboat landing as before; that in or about the month of March, 1864, the plaintiff gave them notice that, if they desired to take the said premises for another year, he would increase the rent $100; and that, after receiving this notice from the plaintiff, they notified him, before the expiration of their said term, that they should not take or keep the premises for another year after the first of May, 1864, when their present term expired.

That they then hired another steamboat wharf, of other parties at Yonkers, before the first of May, 1864, of which, as they are informed and believe, the plaintiff had notice; that said wharf which they so hired not being in a sufficient state of completion to receive their boats until about the twenty-first of May, 1864, they continued to land their steamboats and receive and land passengers therefrom at plaintiff's said wharf, and did not remove their boat-house from said wharf until on or about the twenty-first day of May, 1864, and no longer; and that this was the only possession or occupation of said premises by them after the first of May, 1864; and they deny that thereby, or in any manner, they elected to or did continue their said tenancy for another year, commencing on the first day of May, 1864.

And the defendants admit that they have not paid any rent from the first day of May, 1864; but they aver that they have offered to pay the plaintiff what it was reasonably worth for the aforesaid time which they so occupied said premises after the first day of May, 1864.

Wherefore the said defendants demand judgment that the complaint herein be dismissed, and for their costs of this action."

The cause was referred, and brought to trial before the referee.

At the trial the plaintiff, without offering any evidence, moved for judgment upon the pleadings, which motion was opposed by the defendants. The referee, after hearing argument, adjourned the cause. Subsequently the referee decided

the motion in favor of the plaintiff, and defendants' counsel duly excepted to said decision. The referee, at the same time, without having taken any evidence in the action, made his report in favor of the plaintiff, and decided "that, as the defendants continued to hold over, as tenants of the plaintiff, the premises mentioned in the complaint after the expiration of their lease thereof, ending on the first day of May, 1864, the plaintiff had the right to elect to treat them as his tenants for the year following the first day of May, 1864, upon the terms of their former tenancy;" and decided that the plaintiff was entitled to recover the rent claimed. The defendants excepted to the decision of the referee.

*C. P. Hoffman* for the appellants. The referee had no power to render or order judgment on the pleadings. (*Holmes* v. *Slocum*, 6 How. Pr. R., 217; *Smith* v. *Countryman*, 30 N. Y., 677, 678.) The fact of holding over is merely presumptive evidence of the continuance of the tenancy, and may be rebutted by other evidence. (*Doe* v. *Bell*, 5 Term R., 473; *Bradley* v. *Covell*, 4 Cow., 349; *Jackson* v. *Salmon*, 4 Wend., 327; *Phillips* v. *Covert*, 7 J. R., 3; *Abell* v. *Radcliffe*, 15 id., 507, 508; *Johnson* v. *Church-wardens of St. Peter's*, 4 A. & E., 525; *Algar* v. *Wasson*, Car. & Marsh, 494; *Mayor of Thetford* v. *Tyler*, 8 Q. B., 95; *Rowan* v. *Lyttle*, 11 Wend., 619; *McKay* v. *Mumford*, 10 id., 353; *Waring* v. *King*, 8 Mees. & Wels., 575; *Jenner* v. *Clegg*, 1 M. & R., 217; *Chapman* v. *Turner*, 6 M. W., 104; *Risely* v. *Ryle*, 11 id., 16; *Ibbs* v. *Richardson*, 9 Ad. & El., 849; *Jones* v. *Spears*, 4 id., 832; Chitty on Con., 286, 287, 8th Am. ed.)

*Marsh & Wallis* for the respondent. Defendants having held over and continued in the occupation of the premises after the expiration of their term, plaintiff had a right to regard them as tenants for another year upon the terms of the original lease. (*Conway* v. *Starkweather*, 1 Den., 113; Woodfull's L. & T., 218; *Right* v. *Darby*, 1 Term R., 162, 163; *Doe* v. *Bell*, 5 id., 471, 472; *Osgood* v. *Dewey*, 13 J. R., 240; *Abell* v. *Radcliffe*, 15 id., 505; *Bradley* v. *Covel*, 4

Cow., 349, 350; *Evertson* v. *Sawyer*, 2 Wend., 507; *Sherwood* v. *Phillips*, 13 id., 479, 481; *Bacon* v. *Brown*, 9 Conn., 334; *Witt* v. *Mayor*, 5 Robt., 248; S. C., 6 id., 441; *Hunt* v. *Wolfe*, 2 Daly, 298.)

EARL, C.   The answer admits the relation of landlord and tenant between the parties as to the wharf, and that the defendants had held the wharf as tenants for several years prior to the first day of May, 1864, and paid rent for the same; that the tenancy expired May 1, 1864, and that they held over the term until May 21.   It does not appear precisely what the rights of the defendants were under their lease nor upon what water the wharf was located.   From the fact, however, that it was used for a steamboat landing, we may infer that it was upon the Hudson river.   The defendants admit that they hired the wharf and were tenants of it under the plaintiff, and if they did not have the exclusive right to use it as a steamboat landing, they at least had the exclusive right to collect wharfage from all who did use it.   (*Commissioners of Pilots* v. *Clark*, 33 N. Y., 251.)   I am, therefore, of the opinion that the defendants' liabilities are the same as if they had hired a house instead of a wharf.

The plaintiff claims that because the defendants held over and continued in the occupancy of the premises for three weeks after the expiration of the lease, he had the right to hold them as tenants for the whole year.   This they deny, because they gave him notice before the expiration of the term that they did not intend to occupy the premises for another year, and made arrangements with his knowledge to occupy another wharf.   I am of opinion that the plaintiff's claim is well founded.

The law is too well settled to be disputed that where a tenant holds over after the expiration of his term the law will imply an agreement to hold for a year upon the terms of the prior lease.   (Woodfull's Landlord and Tenant, 218; *Right* v. *Darby*, 1 Term R., 162; *Bradley* v. *Covel*, 4 Cow., 349; *Evertson* v. *Sawyer*, 2 Wend., 507.)   But the defendants

claim that this implication of law may be rebutted and that the tenants may show by proof that they did not intend to hold upon the same terms as the prior lease, and they claim that the notice which they gave in this case was sufficient to overcome this implication. The argument on the part of the appellants is that the relation of landlord and tenant for any given time can only be created by agreement, and in order to make the agreement there must be mutuality. The minds of the parties must meet and both assent to the agreement, and that the notice in this case shows that the defendants did not assent to the tenancy claimed. This argument, as applied to most contracts, would be sound. The general rule undoubtedly is that it takes two parties to make an agreement, and that their minds must meet. But this rule is not of universal application. The law sometimes steps in and makes agreements for parties which they did not mutually intend. A wrong-doer converts my personal property, intending never to pay me for it. I may sue him in trover or I may sue him as upon a sale, upon an implied promise to pay. Another may receive my money, intending not to pay me. Yet I may sue him for money had and received upon an implied promise to pay. In neither of these cases would the wrong-doer have the option to determine whether I should sue him in tort or upon contract. In this case the defendants hold over wrongfully. It cannot be disputed that they were trespassers; and their notice did not deprive their act of holding over of its tortious character. The law should not give them the option to determine whether they should be treated as trespassers or as tenants. This option should be accorded to the innocent owner of the property. The law regards the possession of real estate as a great advantage in any dispute in reference to it. And, hence, a tenant who has obtained possession of real estate cannot dispute the title of his landlord; and, having obtained possession from his landlord, he should not be permitted to hold over, deny his tenancy and convert himself, at his option, into a wrong-doer. If he may give notice that he does not

intend to hold over as tenant, and yet hold for three or six months without being a tenant at any time, leaving his land-lord to an imperfect and uncertain remedy by action of trespass or ejectment, he may greatly embarrass his landlord and defeat a letting for the balance of the year. The safe and just rule I believe to be the one established by authority, that a tenant holds over the term at his peril; and the owner of the premises may treat him as a trespasser or as a tenant for another year upon the terms of the prior lease, so far as applicable. If the argument of appellants' counsel, as to mutuality and consent of both parties, is sound, then a tenant may hold over an entire year, and give notice at its commencement that he will not pay as much rent as stipulated in the prior lease, or that he will not perform some other covenant contained in the same, and then claim, at the end of the year, that he was not liable to pay the rent, or bound by the covenant, because he did not assent, and, thus, that the mind of the parties did not meet. In such case, no matter what objection the tenant made, so long as the landlord did not consent to new terms, he would be bound by the terms of the prior lease.

The conclusion which I have reached upon this branch of the case is sustained by authority.

In *Conway* v. *Starkweather* (1 Denio, 113) it was held that when a tenant, before the expiration of his term, communicated to the landlord his determination not to keep the premises another year, but, nevertheless, remained in possession a fortnight after the expiration of the term, such continuance in possession, notwithstanding what had taken place, enabled the landlord to treat him as a tenant for another year upon the same terms as the prior lease. It was held that the landlord had the election to treat him either as a trespasser or as a tenant. The tenant there claimed, as the defendants do here, that the holding over only furnished presumptive evidence of the continuance of the tenancy, which was sufficiently rebutted by proof that the tenant had given notice that he had hired other premises, and refused to hire the

premises in question. But it was held that the act of the tenant, in holding over, gave the landlord the legal right to treat him as a tenant for another year; and that it was not in his power to throw off that character, however onerous it might be. It is conceded on the part of the appellants that this case is an authority in point for the plaintiff herein. But we are asked to overrule it. This we should not do. The case seems to have been well considered. It has stood unquestioned for more than twenty-five years. It has been cited without disapproval in the following cases: *Hunter* v. *Osterhoudt,* 11 Barb., 33; *Witt* v. *Mayor of New York,* 5 Robertson, 248; S. C., 6 id., 441; *Giles* v. *Comstock,* 4 N. Y., 270; *Park* v. *Castle,* 19 How. Pr. R., 29; 1 Daly, 384. In the case of *Witt* v. *The Mayor of New York* the tenants gave notice that they had hired other premises, and that they would not hold the premises which they had occupied, and yet, because they held over from the first to the twelfth of May, during which time they were engaged in removal, they were held liable for another year. This case was twice before the court, was argued by able counsel and fully considered.

In *Park* v. *Castle* Mr. Justice Balcom says: "When a tenant, for a year or for one or more years, holds over after the expiration of his term, without any express agreement, but with the assent of his landlord, the law implies that he holds the premises upon the former terms for another year." Willard, in his work on Real Estate (p. 97), cites the case of *Conway* v. *Starkweather* with approval, and as authority for the doctrine therein enunciated. And the learned editor of the eleventh edition of Kent's Commentaries (vol. 4, p. 117), citing this case, in a note says: "If the landlord elects, as he may, to treat the tenant as holding under the terms of the original lease, the tenant cannot deny the tenancy." In *Bacon* v. *Brown* (9 Conn., 334), Hosmer, Ch. J., says: "After the expiration of a lease for a year, if the tenant holds over, the law considers him responsible to

his landlord as on a hiring for another year upon the same terms as before."

The only authority I have been able to find sustaining the views of appellants' counsel, and in conflict with *Conway* v. *Starkweather*, is the case of *Jones* v. *Shears* (4 Adol. & El., 832). But I prefer the rule adopted by the authorities above cited, and they must control our decision.

The only other question to be considered is whether the referee had the power to give judgment for the plaintiff upon the pleadings. The claim of appellants' counsel is that he did not have such power. A referee takes the place of the court, and, in the trial of the cause, has substantially all the powers of a court at Special Term or circuit. (Code, § 268.) In *Coffin* v. *Reynolds* (37 N. Y., 640) it was held that a referee had the right, without taking any evidence, to dismiss the complaint upon the motion of defendant, because it did not state facts sufficient to constitute a cause of action. For the same reason he may render judgment for the plaintiff if the answer does not contain facts sufficient to constitute a defence. The defendants in this case did not ask to amend their answer. All the facts necessary to enable the plaintiff to recover were admitted in the answer; and no evidence was competent or could have been received to change the result. It is true that the referee might have waited until the defendants offered proof; and then, upon the objection of the plaintiff, rejected the proof. But this would have been a useless ceremony, of no avail to the defendants. The case of *Smith* v. *Countryman* (30 N. Y., 655) is not in conflict with these views. In that case there was a motion upon the trial to strike out a portion of the answer, and the court held that such a motion was not proper at the trial.

I therefore reach the conclusion that the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.