INGRAHAM, J.
—The defendant in this action .was, prior to the 1st day of May, 1892, in possession of a store, No. 122 Liberty street, in the city of New York, under a lease executed by plaintiff’s grantor, which lease was dated January 14, 1889, ami the term demised was “ three years and four months from the 1st of January, 1889, at the yearly rent of $1,800.” On February 17, 1892, tlie plaintiff purchased the property from the lessor, and took an assignment of the lease. Mr. George R. Reed, a real estate broker of New York, was the agent of the plaintiff. Some time prior to the 1st day of May, 1892, Reed told the defendant’s manager that the rent would be $4,000 per annum, if defendant remained after the 1st day of May, and that the plaintiff would not let the premises for less ; and a clerk in Reed’s office told the defendant’s manager that the rent would be $4,000 per annum if they remained. The defendant expressly refused to accede to this demand, hired other premises, and in April commenced to move. Daring this period there were negotiations between the parties as to the purchase by the plaintiff of some of the property that had been placed on the demised premises by the defendant, which finally resulted in an order by the plaintiff to buy certain of the property in the building for $300, which offer was accepted on April 6, 1892. May 1, 1892, fell on Sunday, and on Monday morning a small engine, a pump, and some shelving and racks that were fixed to the building bjr the defendant had not been moved, together with a considerable amount of scrap iron and other articles. About ten o’clock on the morning of May 2d, the defendant’s employes having left the building, except that a few workmen were engaged in moving, the defendant’s manager, Mr. Hollaway, took the keys of the premises, and went up to Mr. Reed’s office. It appeared that since the purchase of the property by the plaintiff, Reed acted as agent of the plaintiff in regard to the property, all negotiations and transactions in relation to the property having been conducted by Reed on behalf of the plaintiff. Hollaway, on arriving at Reed’s office, presented his card, and asked for an interview with Reed. Reed was absent, and he was referred to a Mr. Cox. Somebody in the office said Cox was the proper man to see. Mr. Cox was in the office, and Hollaway said to him that he had succeeded in removing his stock, but had been unable to clean up all the scraps left there, or to take and carry out all the tools and racks which were left together; and *480 then he said, “ Here is the key,” and handed it to Mr. Cox. Mr. Cox took the key, and Hollaway then said: “ I surrender all the stuff that was in there, the remaining scraps, but that I should be very glad to clean them out at any time, if so desired; and if he (Cox) would grant me a few hours, I would clean them all out in an entirely satisfactory manner to* him.” Cox in reply said to Hollaway : “ All right, Mr. Hollaway, you may take the key. You may have three or four days, if yon choose, and in the meantime I will ask of you a similar concession. I am not able now, owing to my bvsiness, to check over the articles which Mr. Reed had bought of you, and would like from you a week’s time.” To which Hollaway replied: “That is entirely satisfactory, Mr. Cox. You may have a week, or as much time as you choose.” After that Hollaway took back the key, and his men continued working, removing this stuff, until noon, when the men went to dinner. Shortly after, when the men returned from dinner, some time between one and two o’clock, Hollaway received a note from Reed, in which Reed said: “ I assume that by retaining possession of the store and basement at 122 Liberty street you renew your lease for a year at $4,000.” To that the defendant at once replied, stating that he di'd not desire to occupy the store, calling bis attention to the surrender of the keys in the morning, with the request for time to take down the rack, shelving, etc., the acquiescence of Mr. Reed’s representative in that request, and said that if the promise was withdrawn they would return the keys at once. Subsequently, about three o’clock on the same day, Hollaway went to Reed’s office, and said he was somewhat at a loss to understand the position taken by Reed after his interview in the morning. To that Reed said that the defendant must pay $4,000, as they were in there. In reply to that Hollaway said that he would immediately close the place up, and bring the keys over to him. Hollaway immediately closed the place up, and went out, and left it, locked the doors, took the keys,,and went home, leaving the engine and other property on the premises. What was left there were the racks, a certain quantity of refuse scrap, the engine, one pump, and the material that had been sold to the plaintiff. The value altogether, with the exception of what had been sold to the plaintiff, was from $75 to $100. This property was left in the building until subsequently removed by the defendant, under the stipulation between the parties that such removal should* not affect the rights of the other party. On the afternoon of May 2d the store was locked up and on May 3d, about nine o’clock in the morning, Hollaway called at Reed’s office, .when Reed again 'insisted upon his being responsible for the $4,000 rent for .the next year, when on that morning Hollaway gave Reed the key, and told him that he surrendered all the property in the place. Hollaway testified that when he gave the key to Cox he told him that he surrendered everything to him in the place at the time, and that what he said on the 3d, when he gave the key to Reed, was a repetition of what was said- on the 2d; and that he then delivered the key to Reed, who took it, and retained it in his possession. The keys were never returned to the defendant. The *481 defendant was never again in possession of the premises, except that several months afterwards, under the agreement between the parties before referred to, he removed súme of the articles left there on May 2d. This is a statement of the facts as testified to by the defendant’s witnesses, and which, for the purpose of this appeal, we must assume to be true. There was, however, no material contradiction, except as to the delivery of the key to Cox, and what happened at that interview. At the close of the case the defendant requested the coart to submit to the jury—First, the question of the authority of Cox; second, whether there was in fact a holding over by the defendant; and, third, whether' the plaintiff did not extend the time for the defendant to vacate the premises; and to go to the jury upon all the issues in the case,—which motion was denied. The court then directed a verdict for the plaintiff for the rent of the premises for the sum of $4,000, the rent for the whole year, deducting the amount which, under the stipulation, the defendant was not to be liable for.
The lease which defendant held was for three years and four months from the 1st day of January, 1889, which excluded the first day of'the term and included the last, and would give the defendant to and including the' 1st day of May. As that day fell on Sunday, he would have to and including the following Monday, the 2d day of May. 12 Am. & Eng. Enc. Law, p. 981, and cases cited in note 3. It appears, however, to be a custom in the city of Hew York that, where a lease expires on the 1st day of May, the possession of the demised premises shall be surrendered at noon of that day. Assuming, therefore, that the plaintiff was entitled to possession of the premises at ‘12 o’clock noon on May 2d, the first material question in the case is as to whether or not the defendant held over and remained in possession of the premises, with the assent of the owner, after the expiration of the term. The rale is well settled in this state that where a tenant holds over after the expiration of his term the law will imply an agreement to hold for a year upon the terms of the prior lease. See Schuyler v. Smith, 51 N. Y. 300. Holding over is defined to be the act of keeping possession of the premises (Bouv. Law Dict.), and the question is whether or not the tenant remained in possession of the property after the expiration of his term. We do not consider that the period that the defendant held possession of the premises is material. The principle is that a tenant holds over the term at his peril, and the owner of the premises may treat him as a trespasser or as a tenant for another year upon the terms of the prior lease, in the absence of notice to the contrary. Schuyler v. Smith, supra. Bat the burden of proof is upon the landlord to establish the fact that the tenant did hold over, namely, did remain in possession of the demised premises, after the termination of the term demised, so that he became a trespasser, if the landlord elected to consider him as such ; but the possession of the tenant after the termination of the lease, to entitle him to be considered as holding over, must be a continuance of the possession of the tenant acquired under the lease, and if it appears that the possession as tenant *482 was surrendered to the landlord, and that for any interval of time, however short, the tenant ceased to be in possession as tenant, his-resuming possession under-any other agreement would not be such a possession as would impose upon him the liability imposed upon a tenant holding over after the expiration of his term. It is the possession that a tenant acquires under a lease, and retains after the expiration of the term demised, that imposes this obligation upon the tenant As was said by the court in Schuyler v. Smith, supra: The law regards the possession “of real estate as a great advantage in any dispute in reference to it. And hence a tenant who has obtained possession of real estate cannot dispute the title of his landlord; and, having obtained possession from his landlord, he should not be permitted to hold over, deny his tenancy, and convert himself, as his option, into a wrongdoer." Reed was the agent of the plaintiff, who had, under the direction of the plaintiff, taken charge of all the negotiations as to the renewal of the lease; and he had full power to do what, in his judgment, was best for the plaintiff’s interest. There was no-dispute but that any arrangement that Reed would make would be binding upon the plaintiff. Reed was a real-estate broker and agent, who had an office for the transaction of business, having, clerks and employees there to attend to his business in his absence. When plaintiff went to Reed’s office about 10 o’clock on Monday morning, we think he was right in assuming that (at any rate, so far as making a surrender of the possession of the premises) he had a right to deal with the person in charge of Reed’s office as one authorized to accept the possession of the premises. He was not bound to find the paintiff to surrender to him the premises personally, and we think that the surrender of the premises to-a person in charge of Reed’s office—one of his employees there—• would have been a sufficient surrender. The court below seems to have held that there was no evidence that would justify the'jury in finding that Oox had authority to make a new lease of the premises to the plaintiff. Assuming that that is so, it is clear that a surrender of the premises to the person in charge of Reed’s office, with the subsequent abandonment thereof by the defendant, would have terminated the defendant’s possession under the lease. He swears that he went to Reed’s office fot that purpose, taking with him the key of the premises ; that he stated to Cox that he had been unable to clean up all the scraps that were left upon the premises, and take and carry out all the wooden racks that were bound together. “However, I said to him, ‘Here is the key,’ and he took it. I then said to him that I surrendered all the stuff that was in there, the remaining scraps, but 1 should be very glad to clean them out at any time, if so desired, and if he would grant me a few hours, I would clean them all out in an entirely satisfactory manner to him.” If the transaction had closed here, and Hollaway had left, leaving the keys in Cox’s possession, and abandoning the premises, with whatever personal property that was upon the premises, there would be no doubt but that there would have been a surrender of the premises, and the plaintiff could not have been said to be'holding over because of the fact that some *483 property that he had placed in the premises—a part of which, at any rate, had become annexed to the freehold—had not been removed. There is no evidence to show that at this time the defendant or any of its employes, was in actual possession of the leasehold premises. Assuming the defendant’s testimony to be true, it was clearly the intention of Hollaway to surrender all possession under the lease, to give up to the lessor all property that he had left upon the premises, and to deliver the absolute possession of the property to the landlord; and that position was acquiesced in by Cox, who accepted such possession.
The subsequent agreement between Cox and Hollaway was a mere license to re-enter the premises for the purpose of cleaning up, and removing what property remained. If Cox had no authority to give such permission or grant such a license, it might be that the defendant or Hollaway would have been a trespasser, and liable to the plaintiff for any damages sustained in consequence of the trespass, but there was evidence from which the jury could find that such new occupation was not under the lease, but under a new' agreement ■ between Cox and the defendant, which, although not binding upon the plaintiff, was nevertheless not a holding over under the lease. After this new agreement, Hollaway swore that Cox returned the keys to him, said to him that it was satisfactory, and that he (Hollaway) could have two or three days if he chose. Hollaway took the .keys, and went back to work. All this was about ten o’clock. Cox was called as a witness, and swore that he was employed as a clerk for Reed ; was a bookkeeper, and engaged in looking after the details of renting one or two office buildings down town ; that if a tenant said he would take any premises at the rent fixed by Reed, he had authority to close the lease with him. He further testified that Hollaway came to the office with a bunch of keys, and said that he wanted to give him (Cox) the keys of the store, 122 Liberty street, “asthey were all out, or virtually would be in an hour or two,’’ but that he (Hollaway) would like to retain one for the purpose of clearing up; that he did not want to leave the place in a dirty condition. Cox told Hollaway that he did not suppose that there would be any objection, but that he had better keep the keys, and return them right away ; that Hollaway said he would need the keys for an. hour or two; that he had seen Hollaway before, and knew that he had a dispute with Reed as to the future rental of the premises.
Taking the story of these two witnesses together, it is clear that it was a question for the jury to say whether or not the defendant held over under the lease, or whether there was a surrender of the possession under the lease, and a license given by Cox, acting for Reed, the plaintiff’s agent, to retake possession of the plaintiff’s premises for the purpose of clearing up ; and that the possession of the defendant, if possession there was, subsequent to that time, was under such permission given by Cox, and the trial judge should have submitted to the jury the question as to whether or not the defendant continued in the possession acquired under the ¡ease.
*484 We are asked to hold that the former decision of the general term of the superior court is binding upon this court as a decision of the law of this case, and that it was there held that the plaintiff was entitled to a verdict. • We do not so understand the effect of the judgment of the general term ordering a new trial. A verdict had been directed for the defendant, and all that can be said to have been decided by the court was that that direction was improper and should be reversed. We do not pass upon that question here, but simply hold that there was a question for the jury, and that the request of the defendant to submit to the jury the question as to whether or not the defendant held over under the lease should have been granted, and that the refusal of the court to submit that question to the jury was-error. The judgmentmust therefore be reversed, and a new trial granted, with costs to the appellant to abide the event. .
All concur.