(75 App. Div. 388.)

BEESTON et al. v. YALE et al.

(Supreme Court, Appellate Division, Second Department. October 17, 1902.)

1. USE AND OCCUPATION—SURRENDER OF LEASED PREMISES—PROPERTY LEFT THEREIN—ABANDONMENT.

Tenants, at the expiration of their written lease to certain property, delivered the keys, with a written surrender. The surrender was accepted, but the tenants were notified that unless they removed certain of their machinery therefrom they would be held liable "as unlawful occupiers." The title to the machinery, except a boiler installed by defendants, was involved in obscurity. Held, that the tenants plainly intended to abandon any property on the premises to which they might have title, and hence could not be held liable for use and occupation.

2. SAME—ACCEPTANCE OF SURRENDER.

Whether or not they intended to abandon such property, they could not be held liable for use and occupation, their surrender having been accepted by the landlord.

Appeal from municipal court, borough of Brooklyn.

Action by Mary E. Beeston and others against William H. Yale and others. From a judgment in favor of defendants, plaintiffs appeal. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Howard A. Sperry, for appellants.
Leonard S. Wheeler, for respondents.

HIRSCHBERG, J. The case was properly decided in favor of the defendants. The action is brought to recover the sum of $150 for the use and occupation of the premises Nos. 234, 236, 238, and 240 Kent avenue, in the borough of Brooklyn, during the month of January, 1902. It appears that the premises were leased by the plaintiffs to various tenants during the years immediately preceding 1900, and in that year were in the possession as tenant of a corporation or association known as the United States Cement Company. In July, 1900, the property passed into the possession of the defendants as tenants, but by what arrangement, or with whom made, is not disclosed. The defendants remained in possession as tenants until December 31, 1901. On January 15, 1901, a written lease was executed between the plaintiffs and the defendants by which the former leased the property to the latter for the period of one year from January 1, 1901, at the rent of $150 monthly, payable in advance, the lease containing the "express covenant on the part of the landlords that the boiler, engine, elevator, and other machinery belonging to them now contained in said buildings are leased in their present condition only, and are not warranted to be fit for use or to pass in-

spection by the proper authorities." On the day when the term expired the defendants delivered to the plaintiffs the keys of the premises, with a formal written surrender, which was duly accepted by the plaintiffs on January 3, 1901, by a written communication from the defendants' attorney to the plaintiffs' notifying them that "such surrender is hereby accepted, but an inspection shows that the premises are not by any means vacated, but largely occupied by your machinery and other property, and I desire to notify you that unless this property is immediately removed, and the premises vacated, the landlords will charge the value of the use and occupation of the said premises during the time which your property remains there, not as tenants, but as unlawful occupiers of their property, which value is the sum of $150 per month."

It is unnecessary to consider what remedy the plaintiffs would have had if the defendants had left upon the premises considerable machinery and property belonging to them. It is sufficient that upon the proof no right is shown to exist for a recovery on the theory of use and occupation. It was very clearly established that with one or two exceptions all the machinery and property left upon the premises was there when the defendants first took possession, and did not belong to, and could not have been lawfully removed by, them. The title to the property appears to have been involved in some obscurity and complication during the various tenancies, and one of the plaintiffs' witnesses testified that he owned and claimed to own the whole of it. The exceptions referred to in relation to the property not upon the premises when the defendants took possession include a new boiler which they caused to be installed in place of the old one, and two cutting machines which were built on the premises during the defendants' tenancy, but by whom or under what arrangement does not appear. A workman who was in the defendants' employ during their term, and who was also in the employ of the former tenants, continued to reside upon the premises after December 31, 1900, as he had done for years, with the full knowledge of the plaintiffs, and apparently without objection.

Assuming that the defendants had title in any of the property left upon the premises, it is plain that they intended to abandon it. But, however that may be, it is certain that there was no intention on their part to continue in the occupancy of the demised property, and that the plaintiffs so understood. The defendants surrendered the premises, and the plaintiffs accepted the surrender. Referring to a quite similar state of affairs, in Frost v. Iron Co., 1 App. Div. 449, 455, 37 N. Y. Supp. 374, 379, the court said:

"If the transaction had closed here, and Hollaway had left, leaving the keys in Cox's possession, and abandoning the premises with whatever personal property there was upon the premises, there would be no doubt but that there would have been a surrender of the premises, and that the plaintiff could not have been said to be holding over because of the fact that some property that he had placed on the premises—a part of which, at any rate, had become annexed to the freehold—had not been removed."

To the like effect is Power Co. v. Halstead, 5 App. Div. 124, 39 N. Y. Supp. 43, where the tenant left one press upon the property,

and it was held that no surrender even was necessary, inasmuch as the term was at an end, and that a mere vacation of the premises by the tenant was all that could be required.

The plaintiffs could not accept a surrender of the demised premises, and at the same time treat the defendants as still in possession. Where a tenant holds over after the expiration of his term, the land-lord has the option to treat him as a trespasser or as a tenant for another year. Schuyler v. Smith, 51 N. Y. 309, 10 Am. Rep. 609. In Herter v. Mullen, 159 N. Y. 28, 53 N. E. 700, 44 L. R. A. 703, 70 Am. St. Rep. 517, the court said (page 33, 159 N. Y., page 701, 53 N. E., 44 L. R. A. 703, 70 Am. St. Rep. 517):

"It was therefore admitted by the plaintiff's counsel that fifteen days after the expiration of the term provided by the lease the tenants surrendered the premises to the landlord, and that the latter accepted the surrender. After the surrender there could be no recovery of rent, since the landlord could not have the use of the premises and the stipulated rent at the same time. When a landlord accepts a surrender of the premises, this act operates to discharge the tenant from all liability for rent in the future," etc.

And in Macklin v. McNetton, 30 Misc. Rep. 749, 63 N. Y. Supp. 438, it was expressly held by the appellate term, according to the headnote, that, "where a tenant for a year holds over the term, the landlord may treat him as tenant for another year or as a trespasser, but a recovery as for use and occupation cannot be supported."

The judgment should be affirmed.

Judgment of the municipal court affirmed, with costs. All concur.