## BAYLIES v. INGRAM et al.

(Supreme Court, Appellate Division, First Department. June 12, 1903.)

1. LANDLORD AND TENANT—HOLDING OVER—TERMS OF TENANCY.
    A tenant holding over after the expiration of his lease without any express agreement, but with the assent of his landlord, holds on the same terms as those of the original lease, including all the covenants thereof, unless made inapplicable by changed conditions.

2. SAME—COVENANTS FOR RE-ENTRY—SURVIVORSHIP.
    A covenant in a lease giving the lessor the right, on nonpayment of rent or any other breach, to re-enter either by process of law or otherwise, and to relet the premises as agent for the lessee, holding him liable for the deficiency, survived a re-entry by the lessor by summary proceedings, so that an action could be maintained thereon.

Appeal from Special Term, New York County.

Action by Nathalie E. Baylies against Violet Ingram and James Ingram. From an interlocutory judgment overruling demurrer to complaint, defendants appeal. Affirmed.

Argued before HATCH, McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

¶1. See Landlord and Tenant, vol. 32, Cent. Dig. § 284.

F. H. Van Vechten, for appellants.
John Vimont Lyle, for respondent.

HATCH, J. The demurrers interposed herein state as the grounds thereof that the second cause of action set forth in the complaint does not state facts sufficient to constitute a cause of action. The complaint sets forth two causes of action: First. To recover rent of the demised premises for the months of February and March, 1901. The cause of action as therein stated avers the existence of the lease, the accruing of the rent, and the nonpayment thereof. The second cause of action sets forth a covenant contained in the lease, providing as follows:

"And the said lessee hereby agrees to pay the said yearly rent as above stipulated, without any deduction, fraud, or delay; it being understood that in case of nonpayment of the rent at the times and in the manner above provided, or if default shall be made in any covenants or agreements herein contained, the said lessor and the lessor's legal representatives shall have the right to enter the said premises, either by process of law or otherwise, and to relet said premises as agent of the said lessee, and to receive the rent therefor, applying the same to the payment of the rent due by these presents, and holding the lessee and the lessee's legal representatives liable for any deficiency for any damage that may be caused by or through such entry or reletting."

The complaint then avers that in the month of March, 1901, the plaintiff, in accordance with the statute, dispossessed the defendants for the nonpayment of rent of the premises for the month of February, 1901; that plaintiff thereupon re-entered upon and sought to lease the same on behalf of the defendants, as in the lease was provided; that plaintiff was wholly unable to obtain a tenant for the premises for any part of the said year which elapsed after defendants were dispossessed and until the 1st day of February, 1902; that by reason of the premises the plaintiff lost the rent for the entire period of time between the 1st day of April, 1901, and the 1st day of February, 1902, to her damage, $500; that payment of the rent of the premises has been demanded and refused; and judgment is demanded for the sum of $600, with interest thereon from the 1st day of February, 1902. It is to this cause of action that the demurrers are interposed. It appears that the term for which the premises were leased expired on the 1st day of February, 1901, and that the defendants thereafter held over in the occupation of the same until they were dispossessed, thereby electing to continue the use of the premises in accordance with the terms of the lease. It is claimed by the defendants that the covenant to answer for the deficiency of rent in the event of a re-entry did not survive the expiration of the term provided for in the written lease. We are not able to reconcile this claim with the rule of law which obtains where there is a holding over by the tenant after the expiration of the term demised by a written lease. The relation of the parties under such circumstances has been the subject of repeated adjudication. In the leading case of Schuyler v. Smith, 51 N. Y. 309, 10 Am. Rep. 609, Judge Earl, in writing for the Commission of Appeals, said, in respect of a tenant's holding over: "The owner of the premises may treat him as a trespasser

or as a tenant for another year upon the terms of the prior lease, so far as applicable." The court subsequently reviews many cases, and approves of their doctrine, in which the rule is laid down without qualification that, where a tenant holds over after the expiration of his term, without any express agreement, but with the assent of the landlord, the law will imply that he holds the premises upon the same terms as was his previous holding; and such view has been generally adopted. Frost v. Akron Iron Co., 1 App. Div. 449, 37 N. Y. Supp. 374; Farrell v. Manhattan Ry. Co., 43 App. Div. 143, 59 N. Y. Supp. 401; Laughran v. Smith, 75 N. Y. 205. The limitation applied by the language "so far as applicable" manifestly can have no application in the absence of proof showing a changed condition of affairs which would naturally or of necessity operate to modify the relations existing between the parties. In the absence of any proof upon the subject, there can be no reason for holding that the relations of the parties have changed, so nothing has occurred to break the continuity of the holding, or from which it can be implied that any conditions exist rendering inoperative any of the terms of the lease. Nor do we think that the rule is limited to the relation merely of landlord and tenant in the use and occupation and the payment of rent, so as to exclude the independent covenants from continuing with the other parts of the lease. A holding over, to be upon the same terms as contained in the original lease, carries with it the necessary implication that all of the covenants which became binding by the execution of the lease continue to remain in full force, unless changed conditions appear rendering them inapplicable. We can conceive of no sound reason which would warrant the rejection of any part of the lease upon which the parties agreed. Their relation continued in all respects precisely as if the term had not expired. The holding over constitutes merely an enlargement of the term, and the lease is applied thereto with the same force as though it had been re-executed. In Webber v. Shearman, 3 Hill, 547, it was said by Cowen, J.: "Holding over after the expiration of a sealed lease is a continuation of the same tenancy, and an enlargement of the same term." People ex rel. Chrome Steel Co. v. Paulding, 22 Hun, 91. In Elwood v. Forkel, 35 Hun, 202, the doctrine of the survival of independent covenants under a holding over was expressly adjudicated. We have examined the authorities relied upon by the appellants as announcing a different rule, and find them without application. They arose in controversies respecting the rights of the tenant to remove fixtures after the expiration of the term, and their disposition was governed by quite different principles from those which find application in the present case. The rule is that all parts of the lease survive the holding over unless shown to be inapplicable by reason of changed conditions. The rights and liabilities, therefore, of the parties to this action are to be determined precisely as though the term of the original lease was in existence at the time of the dispossession.

The further question presented by the demurrers is, did the independent covenants averred in the complaint survive the re-entry of

the landlord under the summary proceedings by which the tenant was dispossessed? It is evident that the covenant itself could not come into operation until there was a breach of its conditions. Its purpose was to provide a remedy in favor of the landlord should the defendants be guilty of a breach of the terms and conditions of the lease. Manifestly, a provision which gave a remedy for the tenant's default ought not to be held to fail the moment the relation of landlord and tenant ceased in consequence of a breach by the tenant. The covenant was aimed at just such a contingency, and was utterly valueless unless it can be made to serve the purpose of its creation; otherwise it would be a mere dead letter without any vitality whatever. The covenant contemplated a re-entry by the landlord, and provided therefor. It also provides for a reletting, the tenants stipulating that, if any deficiency arose therefrom, they would be responsible therefor. These provisions could only be of value by being operative after the default and the re-entry by the landlord into possession. It is said, however, that the summary proceedings not only destroyed the relation of landlord and tenant, but wiped out the provisions of the lease, and that this covenant fell with such result. In support of this position the defendants rely upon the case of Michaels v. Fishel, 169 N. Y. 381, 62 N. E. 425. The provisions of the covenant in that case were entirely different from the covenant contained in the present lease. The decision therein turned upon the construction of the covenant then before the court. It provided that in case of default in the payment of rent it should be lawful for the lessor "into and upon the said premises and every part thereof to re-enter, and remove all persons therefrom, and the same to have again, repossess, and enjoy as in their first and former estate." By an independent paragraph it was further provided that in the event of a re-entry it should be lawful for the lessors "at their option to relet the premises as the agents of the lessee, and to receive the rent therefor, applying the same to the payment of the rent due by these presents, and holding the said lessee, his executors, administrators, and assigns, liable for any deficiency." In the construction of this covenant it was held that the right of re-entry reserved therein contemplated the technical common-law right of ejectment, and did not include removal by statutory summary proceedings; that, when the tenants were dispossessed by virtue of such proceedings, the lease was terminated; that no rent could accrue thereunder, and no liability could attach for rent, except such as was due at the time when the proceedings were instituted. The rule of that case was that no rights could accrue under the covenant unless the re-entry was by ejectment according to the authority of the common law. The decision admits that the rule was purely technical, and the ground upon which the decision proceeded was so narrow as to provoke a strong dissent. We should not, therefore, extend the doctrine of that case beyond the covenant there under consideration. In the present case the covenant is entirely different. It provides in terms for a re-entry by any of the forms known to the law; and this includes the right of re-entry by summary proceedings, which was not authorized in the Michaels Case, supra. As the parties con-

tracted for a re-entry in this manner, it necessarily follows that the covenant survives such re-entry, the same as the covenant would have survived the re-entry in the Michaels Case had it been by process of ejectment, or had possession been acquired by the landlord in any other form authorized by the covenant. In McCready v. Lindenborn, 172 N. Y. 400, 65 N. E. 208, there was a re-entry by the landlord pursuant to a covenant providing for renting after re-entry and for payment by the tenant of any deficiency arising therefrom, and it was held that such covenant survived the re-entry; the court saying:

"The right of action upon the covenant broken prior to re-entry survived that act, and the plaintiff was at least entitled to recover rent, as such, for the month named." And again: "One unbroken covenant survived re-entry, because it provided expressly for that contingency by authorizing the lessor to re-let the premises, and requiring the lessee to pay any deficiency in equal monthly payments, as the amount thereof should, from month to month, be ascertained, by deducting from the rents reserved the rents received. * * * By the express contract of the parties, a separate and independent cause of action arose under this covenant every month when there was a deficiency ascertained in the manner provided."

If we are right in our construction of this covenant, that a re-entry was authorized by summary proceedings, then it is plain that the covenant to pay deficiency in rent accruing after such re-entry survives, and furnished to the plaintiff an independent cause of action for the amount of such deficiency. Such being the case, it follows that the demurrers were properly overruled.

The interlocutory judgment should, therefore, be affirmed, with costs, with leave to the defendants to withdraw demurrers, and to answer over within 20 days upon payment of costs in this court and in the court below. All concur.