(164 App. Div. 191)

SIXTY WALL STREET v. CLEVENGER.     (No. 6120.)

(Supreme Court, Appellate Division, First Department.   November 6, 1914.)

1. LANDLORD AND TENANT (§ 233*)—PRINCIPAL AND AGENT (§ 174*)—ACTIONS FOR RENT — SUFFICIENCY OF EVIDENCE — RATIFICATION — QUESTIONS FOR JURY.

In an action for rent which accrued under a lease after the vacation of the premises by the tenant, *held* on the evidence, that the questions whether the landlord's agent accepted a surrender of the lease, and, if so, whether his act was authorized or ratified by the principal, were at least questions for the jury.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 49, 940–944; Dec. Dig. § 233;* Principal and Agent, Cent. Dig. § 725; Dec. Dig. § 174.*]

2. PRINCIPAL AND AGENT (§ 170*)—RATIFICATION—ACQUIESCENCE.

Where a lease, which provided that in case the tenant vacated the premises the landlord might either relet as the agent of the tenant or terminate

the lease, was surrendered by the tenant to the landlord's agent, who had authority to accept a surrender without consulting the landlord, if it was to the landlord's benefit, and there was testimony that the agent stated that he desired the room to rent with an adjoining room, the landlord was bound to disaffirm the act of the agent and to notify the tenant that he was renting as the tenant's agent, and failure to give such notice amounted to a ratification of the agent's acceptance of the surrender.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 685–690; Dec. Dig. § 170.*]

Appeal from Appellate Term, First Department.

Action by Sixty Wall Street against Jospeh R. Clevenger. A judgment for the plaintiff, entered upon a directed verdict in the Municipal Court, was affirmed by the Appellate Term, and the defendant appeals by permission (162 App. Div. 900, 146 N. Y. Supp. 1113). Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Joseph R. Clevenger, of New York City, for appellant.
Louis Lowenstein, of New York City, for respondent.

LAUGHLIN, J. [1] This is an action for rent, and it is based on a lease in writing executed on the 19th day of December, 1912, by which plaintiff leased to the defendant room No. 507 in its building, known as "Sixty Wall Street," for the period of one year and four months, commencing on the 1st day of January thereafter. The chief point litigated upon the trial was whether the plaintiff accepted a surrender of the premises before the expiration of the term, and the appeal depends on whether an exception to the refusal of the court to submit that question to the jury, as duly requested by counsel for the defendant, constitutes reversible error.

George R. Read & Co., a corporation, had general charge of renting the offices and collecting rents for the plaintiff, and one Class, an employé of the agent, was, according to his testimony, "in charge of the office buildings and agency work" for it. All negotiations for leases between tenants and the landlord appear to have been conducted with or through Class. When this lease was negotiated, the defendant was occupying the office with one Carter, who was the lessee. Carter was in arrears for rent, and dispossess proceedings were pending against him. The defendant opened negotiations with Class, who also had charge of the dispossess proceedings, with a view to having Carter's lease surrendered and to his obtaining a lease of the office. As a result of these negotiations, defendant paid the arrears of rent owing by Carter and the costs and expenses of the proceeding to dispossess him, and plaintiff accepted a surrender of Carter's lease and made the lease upon which this action is based. It was shown that the agent had authority to accept a surrender of a lease in those circumstances, and the agent, without consulting its principal, assumed to have authority, and the principal apparently without question ratified the contract thus negotiated by its agent, and accepted the surrender of the Carter lease, and executed the lease to the defendant. On or

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

about the 9th of April, 1913, Carter called on Class at the request of the defendant and delivered a message to the effect that the defendant had rented an office in the Woolworth Building and would surrender his lease from plaintiff as of May 1st, and would give possession prior to that day. Carter testified, but with respect to this his testimony is controverted by that of Class, that he further said to Class in that interview, "I suppose you would like to have it to rent this year, together with room 506, as it is especially adapted to that purpose," and that Class replied, "Yes; all right, Mr. Carter; we want to get it back on our lists again as soon as possible," and that Class requested that he have defendant confirm their interview by a formal letter. Notwithstanding the fact that Class denies that he requested Carter to have the defendant write confirming the interview, the uncontroverted evidence shows that defendant did write to Class, care of the agent, under date of April 9, 1913, saying: "This will confirm Mr. Carter's conversation with you to-day, and I shall surrender possession before May 1st. Trusting that you will rent the premises, I am, Very respectfully yours;" and neither Class nor plaintiff's agent replied to that letter.

The defendant evidently assumed that it was understood that he was. at liberty to vacate and surrender the office, and on the 25th day of April he moved out, and after doing so tendered the keys to the janitor, who refused to take them and referred him to the agent. The defendant called at the agent's office the next morning and left the keys with one Hassel, who in the absence of Class represented him, but, it appears, was not clothed with full authority for final action without referring matters to Class. Hassel admits that he received and retained the keys; but he claims that he stated, in accepting them, that it was to be without prejudice to the plaintiff's rights. The defendant says that Hassel at first hesitated to accept the keys on the ground that it would release defendant from liability, but finally said he had discussed the matter with Class and that it would be all right, and manifested a desire to have the defendant assist the agent in procuring the Mexican consulate as a tenant in the Beaver Building, not owned by plaintiff. The agent customarily delivered bills for rent in advance at the office on the 1st day of the month or the last day of the preceding month; and although it knew the office to which the defendant had moved, no bill was rendered to him for rent for the month of May until the 7th day of May, when he received a bill for rent for the month of May by mail, addressed at his office in the Woolworth Build. In the meantime he had received no disaffirmance of the surrender from plaintiff or the agent, and no communication from either of them with reference to his having so surrendered possession and delivered the keys. He at once returned the bill to the agent.

The lease authorized the landlord, in case the premises were deserted or vacated, to enter and relet as agent of the tenant, or to terminate the lease, at its election. It appears that the agent listed the office for rent during the month of May and since, and endeavored to secure a new tenant therefor; but nothing, other than has been stated and the rendition of further bills and the bringing of this ac-

tion on the 29th of August, 1913, appears to show whether or not the plaintiff, in thus attempting to lease the office, had elected to terminate the lease or to act as agent of the defendant. Unless it can be said as matter of law on the evidence that the agent had no authority to accept the surrender of the lease, and that plaintiff did not ratify the surrender, the judgment cannot be sustained. We are of opinion that, if it cannot be said as matter of law that the agent had such authority, or that plaintiff ratified its acceptance of the surrender, those were questions of fact and should have been submitted to the jury.

[2] It was shown by the representatives of the agent, who testified, in effect, that if it was to the benefit and advantage of the plaintiff to accept and surrender and consideration was received therefor, the agent was authorized, without consulting its principal, to accept a surrender. The circumstances under which defendant obtained the lease led him to believe that the agent possessed this authority. It is manifest that it might have been to the benefit of the landlord to have possession of this office surrendered, in order that it might combine it with another office or offices, and in that manner be able to obtain a more advantageous lease, as is indicated by some of the evidence to which reference has been made. We think that in any event the plaintiff is chargeable with knowledge of the circumstances under which the defendant surrendered possession of the premises, and that, if it intended to hold him, it was called upon to repudiate the acts of its agent in accepting the surrender, if there was an unconditional acceptance of a surrender, and to notify the defendant whether it elected to terminate the lease or to re-enter and rent the office as his agent. The defendant, in dealing with such an agent in the circumstances, was not, we think, called upon to ascertain the authority of the agent at his peril. He desired to negotiate a surrender of the lease, and he took the matter up with the representative of the landlord through whom he received his lease. He had a right to assume, we think, that, if the agent did not have the authority to act in the premises, the agent would at least transmit his request and consult the principal, and that if the latter did not ratify the surrender it would disaffirm it, or in some manner notify defendant that it would still look to him for the rent and deal with the office as his agent. The agent assumed to accept the surrender for the plaintiff, and the principal was, in the circumstances of this case, chargeable with notice of the circumstances under which the defendant surrendered possession of the office to its agent, and if there was not original authority, ratification might be inferred by the jury from the failure of the plaintiff to repudiate or disaffirm the act of its agent and to notify defendant in some manner that it intended to continue to hold him liable. Goldsmith v. Schroeder, 93 App. Div. 206, 87 N. Y. Supp. 558; Warrin v. Haverty, 159 App. Div. 840, 144 N. Y. Supp. 1004; Lillian Realty Co. v. Erdurm, 120 N. Y. Supp. 750; Feust v. Craig, 107 N. Y. Supp. 637; Briggs v. Kennett, 8 Misc. Rep. 264, 28 N. Y. Supp. 540, affirmed on opinions below 149 N. Y. 577, 43 N. E. 986; Frost v. Akron Iron Co., 1 App. Div. 449, 37 N. Y. Supp. 374; McAdam on Landlord and Tenant, vol. 2, page 1274.

Some of the material facts, depending upon what took place at the two interviews with respect to the surrender, were controverted, and the defendant's rights necessarily depend on their determination favorably to him. We are of opinion, therefore, that the case should have been submitted to the jury, both with respect to those questions and to the authority of the agent and ratification.

It follows that the determination of the Appellate Term should be reversed, with costs in this court, and in the Appellate Term to appellant to abide the event, and the judgment of the Municipal Court reversed, and a new trial granted. All concur.