EDWARD J. FARRELL, Appellant, *v.* FRANCES JUDGE
WOODWARD, Respondent.

(Supreme Court, Appellate Term, First Department, November,
1917.)

Landlord and tenant — lease — action for rent — trial — judgments —
appeal.

Where a landlord prior to the termination of a written lease
notified the tenant that if she did not sign a new lease embody-
ing proposed new terms she would not be allowed to hold over
except upon the understanding that such holding over would be
upon the new terms, the action of the tenant in holding over
notwithstanding her oral objections to the new terms is, as mat-
ter of law, an acceptance of the landlord's proposition resulting
in a renewal of the lease upon the new terms, and in an action
for rent judgment for the dismissal of the complaint on the
ground that no new lease had been established will be reversed
and a new trial granted.

APPEAL by plaintiff from a judgment of the Munici-
pal Court of the city of New York, borough of Man-
hattan, second district, dismissing the complaint at the
close of the plaintiff's case.

Edwards, O'Loughlin & George (Gerald S.
O'Loughlin, of counsel), for appellant.

Gwinn & Deming (W. H. Dannat Pell, of counsel),
for respondent.

BIJUR, J.    This action was brought by the plaintiff,
as landlord, to recover from the defendant, as tenant,
the rent of a house for the months of February, March
and April, 1917. The claim has arisen upon the follow-
ing state of facts:

Plaintiff rented this property to defendant upon a

written lease made in 1915 for the term of one year beginning May first of that year at a rental of $175 monthly, payable on the first day of each month. The 9th paragraph of the lease reads as follows:

" *Ninth.* And it is further agreed between the parties hereto that the party of the second part has made examination of the buildings and premises and leases the same in their condition as found at the time of making this lease with the understanding that the said party of the second part will be allowed the rental of the months of February and March, 1916, for doing at her own expense such decorating of rooms, etc., and such shelving in the butler's pantry and kitchen as considered necessary by her during the term of this lease. And also it is understood and agreed that party of the second part shall be allowed the rental of the month of April, 1916, in consideration of caring for said premises and doing at her own expense all repairs that may become necessary to the interior and exterior of the buildings and premises during the term of this lease."

On March 16, 1916, plaintiff sent to defendant the following letter:

" Mrs. FRANCES JUDGE WOODWARD,
    " 302 Sanford Ave.,
        " Flushing, New York:

" DEAR MADAM.— From a letter received from Runge & Co., the 11th inst., I understand that you desire to remain another year, as a tenant of premises No. 302 Sanford Ave. I will say that I am willing to extend the present lease for one year, with the understanding that you will make all necessary repairs, during the term at your own expense.

" In connection therewith I will have the metal roof of house examined and if I find it needs repair or

36

repainting, I will have same done before the commencement of the term.

" If this is satisfactory to you and you decide to take the premises for another year, we can make the. necessary endorsement on the present lease.

" Respectfully,

" (Signed)     E. J. FARRELL."

This letter was delivered to defendant by Mr. Runge. (a member of Runge & Co., therein referred to), who was the agent of the plaintiff and who had negotiated the original lease with defendant. Runge testified that when he delivered this letter, defendant told him that she " wouldn't sign such a lease." Subsequently he delivered to her a letter of April 27, 1916, reading as follows:

" Mrs. FRANCES JUDGE WOODWARD,

" 302 Sanford Ave.,

" Flushing, N. Y.:

" DEAR MADAM.— Not having heard from you in reply to my letter of March 16th I take it you are going to remain and occupy the premises, No. 302 Sanford Ave., for another year in accordance with that letter, that is: under the present lease with the understanding that all interior and exterior repairs, etc., are to be done by you at your own expense.

"As I mentioned before it might be well to make an endorsement to this effect on the present lease, but of course if you do not care to do this it will be satisfactory to me, as you will understand that after May the First you will remain as a holdover lessee for another year under the above conditions.

" I write you now so that there will be no misunderstanding between us later.

" Respectfully yours,

" (Signed)     E. J. FARRELL."

He testified that she then said after reading the letter: " That doesn't need any answer." Thereupon defendant continued to occupy the premises paying the monthly rental reserved in the lease until February, 1917. She has refused to pay the rental for February, March and April on the claim that the lease having been renewed upon its precise terms she was not required to pay rental for those months — referring, of course, to the provisions of paragraph 9 of the lease of 1915.

The learned judge below, upon the appearance of these facts, was of opinion that " no new lease had been established between the parties," and therefore dismissed the complaint. In this conclusion I cannot concur. Had defendant merely held over without any exchange of communications between herself and plaintiff, the old lease would thereupon, at the option of plaintiff, have become renewed. *Kennedy* v, *City of New York,* 196 N. Y. 19. Even in that event, I think it would be, to say the least, exceedingly doubtful whether the implied renewal would extend so literally the terms of the previous lease as to require the conclusion that defendant was not to pay rent for the months of February and March, 1917. It is evident that the first clause of paragraph 9 was intended to award to defendant free rent for those two months in consideration of her making such repairs or improvements in the premises as would make them more available to her in certain matters of convenience and taste. I think it may fairly be inferred, if it does not indeed clearly appear, that these were not alterations in the nature of general repairs or of work that could reasonably be expected to be required annually, but rather in the nature of a particular and peculiar improvement to be made once to meet the wishes of a prospective tenant. The very nature of the improvement then

would preclude us from inferring that it was to be repeated, and consequently from holding that a renewal of the lease renewed those terms of it. This is not true, however, of the 2d clause of the 9th paragraph which allowed the rental of the month of April in consideration of the defendant's making general repairs '' necessary to the premises during the term of this lease.'' It is possible to present a persuasive argument that that clause was renewed by a renewal of the lease.

Defendant-respondent contends also, among other things, that plaintiff's letters of March and April, 1916, did not other than renew the lease, literally emphasizing as it were the provisions of article 9 in so far as plaintiff's letters repeat '' that all interior and exterior repairs are to be done by you *at your own expense.*'' The use of this phrase may have been unfortunate, because of its similarity to the language of the 9th clause of the lease, but, as I read the letters, they were a plain intimation by the plaintiff that if defendant elect to remain another year she might do so with the understanding that any repairs to be made must be at her own *net* expense, that is, without reimbursement by way of allowance for rent. That is the common sense interpretation of the language under the circumstances disclosed. While it is true that the 9th clause of the lease also provides that the repairs were to be done at defendant's '' own expense,'' this is coupled in the same clause with the provision that she is to receive a special allowance to compensate her therefor. The words in the lease '' at her own expense '' were ill chosen, but the meaning there is perfectly clear because the phraseology employed is elaborated by the provision for an allowance. Unless the plaintiff had intended to change the terms of the lease in respect of the liability for the cost of the

repairs, his reference to the subject in his two letters
would have been both superfluous and meaningless.
Since in the letters he provided that the repairs were
to be done at defendant's own expense without qualifi-
cation and without any suggestion of any allowance
therefor, it seems to me that we must conclude that the
meaning plainly intended was that defendant should
pay for the repairs without receiving the reciprocal
allowance or compensation originally provided for.
Defendant has shown that that was her understanding
by the testimony which her own counsel brought out
on cross-examination of plaintiff's witness Runge,
i. e., that, in answer to his proposition, she said that
she " refused to sign such a lease," that is, to accept
the proposition although she was always ready to
renew the lease on the original terms.  She, therefore,
clearly understood that plaintiff was proposing a
renewal upon terms different from the old lease in
respect of any allowance to her for the cost of repairs.
    Were a question of fact involved in the decision of
this case, I think that there might be serious doubt as
to the precise meaning of defendant's answer (simi-
larly testified to by Runge on cross-examination) to
plaintiff's second letter, namely, the one of April 27,
1916.  In this letter, after proposing the change in the
terms of the lease to which I have alluded, the plain-
tiff repeats that it might be well to indorse a memo-
randum to that effect on the lease, but that if the
defendant did not care to do this, " It will be satisfac-
tory to me, as you will understand that after May 1st
you will remain as a hold-over lessee for another year
under the above conditions."  To this defendant replied,
as Runge testified, " that doesn't need any answer."
Taken literally this reply is quite as consistent with the
interpretation that it was an acquiescence in plaintiff's
dual proposal that the lease be changed, and that

defendant need not take any action thereon beyond holding over, as it is with the idea of a rejection of the proposition. But on a reading of this testimony in connection with her previous refusal to sign a lease embodying these terms its fair construction would be that of a continued refusal to the same effect. Assuming then that the plaintiff, prior to the termination of the lease, had notified the defendant that if she did not sign a new lease embodying his proposed new terms she would not be allowed to hold over except upon the understanding that such holding over would be upon the new terms, we are brought to a consideration of the legal effect of her holding over notwithstanding her oral objections to the terms. I have no doubt that the result of her action must be interpreted as matter of law as an acceptance of the landlord's proposition, and a renewal of the lease on the terms proposed by him. Such, as I read it, is the plain import of the cases. And although it is true that in some cases, as for example, *Scully* v. *Roche*, 76 Misc. Rep. 458, the tenant at first actually complied with the changed terms, namely, paid a month's rental at the proposed increased rate, that is merely a circumstance and not a distinguishing feature. In other cases, like *Despard* v. *Walbridge,* 15 N. Y. 374, the tenant made no reply to the landlord's communication, but merely held over. I do not think that this difference in circumstances is material. The landlord, as owner, has, upon the termination of a lease, the sole right of possession of the premises, and he alone has the consequent right to prescribe the terms upon which either a new or a continued occupancy thereof shall be enjoyed. His proposition of terms may be rejected, and, if the proposed tenant be then in occupancy, possession may be by him surrendered. But if he elect to remain, the mere fact that he, by word of mouth, undertakes to reject or

change the landlord's terms cannot alter the facts and the underlying rights. His continuance of occupation must be deemed more eloquent than his words, and as implying acquiescence in the landlord's proposal. This has been expressed by Earl J., in *Schuyler* v. *Smith,* 51 N. Y. 309, 315, as follows: "The safe and just rule I believe to be the one established by authority, that a tenant holds over the term at his peril; and the owner of the premises may treat him as a trespasser or as a tenant for another year upon the terms of the prior lease, so far as applicable. If the argument of appellants' counsel, as to mutuality and consent of both parties, is sound, then the tenant may hold over an entire year, and give notice at its commencement that he will not pay as much rent as stipulated in the prior lease, or that he will not perform some other covenant contained in the same, and then claim, at the end of the year, that he was not liable to pay the rent, or bound by the covenant, because he did not assent, and, thus, that the mind of the parties did not meet. In such case, no matter what objection the tenant made, so long as the landlord did not consent to new terms, he would be bound by the terms of the prior lease."

The case is analogous, it seems to me, to those in which the use of a check sent under appropriate circumstances by the maker as an accord and satisfaction is held to effect that result regardless of any unilateral reservation made by the recipient *without affording to the maker the opportunity to withdraw the check before its use.*

An interesting case in this connection in *Laroe* v. *Sugar Loaf Ref. Co.,* 180 N. Y. 367, wherein the sending and use of such a check was held not to constitute an accord because *prior to its having been made and forwarded* the future recipient had notified the maker

that any check sent by him, whether pretending to be " in full " or otherwise, would be treated merely as a payment on account.

Had the defendant, in the instant case, in response to the landlord's proposition, vacated the premises and then notified him before resuming possession that if he permitted her to re-enter she would consider the lease renewed upon precisely the old terms, the situation would accord with that presented in the *Laroe* case, and might, to my mind, involve the holding for which she now contends, but which I think is unsound under the circumstances here disclosed.

PHILBIN and ORDWAY, JJ., concur.

Judgment reversed, new trial granted, with thirty dollars costs to appellant to abide event.