AMBLER GARAGE, INC., Appellant, v. THE PEOPLE OF THE STATE OF NEW YORK, Defendant, Impleaded with SECOND AVENUE AND NINETY-FIRST STREET REALTY CORPORATION and Another, Respondents. First Department, June 10, 1932.

*Max Bergman* of counsel [*Jacob Meadow* with him on the brief; *Ba.sha & Meadow*, attorneys], for the appellant.

*Isidore Ehrman*, for the respondents.

MERRELL, J. The action was brought to foreclose a lien given to secure a deposit under a lease. On June 25, 1928, the defendant Second Avenue and Ninety-first Street Realty Corporation, as landlord, entered into a written lease with plaintiff, as tenant, whereby

the said landlord leased unto the tenant and the tenant hired from the landlord the premises known as street numbers 1763 Second avenue and 234–236 East Ninety-second street, in the borough of Manhattan, New York city, with the appurtenances, for the term of twenty-one years from July 1, 1928, at the yearly rent of $33,600 for the first seven years of said term, payable in monthly installments of $2,800 each; $36,000 for the succeeding seven years, payable in monthly installments of $3,000 each; and $38,000 for the last seven years of said term, payable in monthly installments of $3,166.66, said rent to be paid in equal monthly payments in advance on the first day of each and every month during the term aforesaid. The lease also provided that if any rent should be due or unpaid or if default should be made in any of the covenants of the written lease entered into between the parties, then it should be lawful for the landlord to re-enter said premises and to have, repossess and enjoy the same again, by legal proceedings or force without being liable to prosecution therefor. After the execution of the lease and on January 15, 1929, the said Second Avenue and Ninety-first Street Realty Corporation conveyed the aforementioned premises to the defendant Wagnall Realty Corporation, subject to the aforementioned lease, and also gave a written assignment of said lease and the security deposited thereunder to said defendant Wagnall Realty Corporation. Several provisions of said written lease are pertinent to the controversy between the parties here. The 14th clause of said lease provides as follows:

" 14. That in the event of a *bona fide* sale, subject to this lease, the Landlord or its assigns, shall have the right to transfer the security deposited hereinafter mentioned to the vendee for the benefit of the Tenant and the Landlord, or its assigns, *shall be considered released by the Tenant from all liability for the return of such security.*" (Italics are the writer's.)

It is conceded that on January 15, 1929, the Second Avenue and Ninety-first Street Realty Corporation made a *bona fide* sale of the premises in question to the Wagnall Realty Corporation, and under the terms of the 14th clause above quoted the landlord had the right to transfer the security deposited by the tenant to the vendee for the benefit of the tenant, and thereby the landlord or its assigns was released by the tenant from all liability for the return of such security. The 15th clause of said lease provides as follows:

" 15. The Tenant has this day deposited with the Landlord the sum of Twelve Thousand ($12,000) Dollars, as security for the faithful performance of and compliance with all the terms, covenants

and conditions in the within lease contained. It being expressly understood and agreed that if the Tenant fails to comply with each and every the terms, covenants and conditions of the lease, surrenders said premises without written consent of the landlord or is dispossessed therefrom or abandons same prior to the expiration of this lease, then in that event the said sum of Twelve Thousand ($12,000) Dollars herein deposited as a security shall belong to the Landlord as fixed, liquidated and agreed damages, in payment of such disbursements, costs and expenses that it may undergo for the purpose of regaining possession of said premises, and the parties hereto agree to treat said deposit as liquidated damages, in payment of such costs, disbursements and expenses sustained by it because the parties hereto cannot ascertain the exact amount of costs, disbursements and expenses which the Landlord would sustain in the event of any breach or violation hereunder by the Tenant, it being expressly understood that upon the Landlord retaining and holding the said securities for the payment of such costs, disbursements, and expenses that it may have been put to, that the same shall not in any manner be considered as payment for any rent due or to become due by reason of these presents, or in any manner release the Tenant from such rents to be paid, or from any of the obligations herein assumed by the Tenant. If, however, all terms, covenants and conditions are fully complied with by the Tenant then and in that event the security shall be returned to the Tenant upon surrender of the premises in a good state and condition, reasonable use and wear thereof excepted, at the expiration of this lease.''

After the Wagnall Realty Corporation had taken possession of said real property, subject to said lease, the tenant being in arrears in the payment of rent in the sum of $4,003, the Wagnall Realty Corporation instituted summary proceedings against the plaintiff herein as tenant for the non-payment of rent. On September 1, 1931, a final order was entered in dispossess proceedings awarding the landlord possession of the premises in question, which finally resulted on September 9, 1931, in the issuance of a warrant to dispossess the said plaintiff for non-payment of rent. Thereupon plaintiff brought the present action to recover $12,000 which it had deposited as security for the faithful performance of all the terms, covenants and conditions contained in the lease. Plaintiff based its action upon the theory, *first*, that the plaintiff was entitled to the aforementioned sum because the same, notwithstanding the provisions of the 15th clause of said lease above quoted, was not liquidated damages; and, *second*, that by the issuance of the warrant of dispossess the lease was terminated. It was conceded by plain-

tiff that when said dispossess proceedings were taken and warrant resulted, it was in arrears in rental in the sum of $4,003; that it had not paid the September rent which became due September 1, 1931, in the sum of $2,800, and that it is also indebted for a balance of rental in the sum of $600 and the costs of re-entry and for repairs amounting to $560. In addition thereto there remained unpaid the rent for October, November and December, 1931, and for January, 1932. At the time of the trial herein, January 7, 1932, the premises were still vacant. The evidence showed that the owner in fee had re-entered the premises pursuant to the re-entry clause contained in the lease and had attempted to rent the building as agent for the tenant, but was unable to do so. Controverting the claim of plaintiff the defendants Wagnall Realty Corporation and Second Avenue and Ninety-first Street Realty Corporation contend that the lease did not terminate upon the issuance of the warrant as the lease survived the issuance of said warrant pursuant to the 17th paragraph of said lease, and that plaintiff is not entitled to the payment of the security as the same was stipulated to be liquidated damages pursuant to clause 15 of the lease above quoted, and that, furthermore, pursuant to paragraphs 15 and 21 of the lease said security was not to be returned until the expiration of the lease, provided the tenant had fully complied with the terms thereof, and that, therefore, the action was prematurely brought. It is also the contention of defendant Second Avenue and Ninety-first Street Realty Corporation that having conveyed the premises in question to the defendant Wagnall Realty Corporation, subject to the lease, and having turned over the security to said defendant Wagnall Realty Corporation, said defendant Second Avenue and Ninety-first Street Realty Corporation became released from all liability for the return of said security pursuant to the provisions contained in paragraph 14 of said lease, as by the terms of the lease no assumption of payment of the security by the vendee was necessary.

Paragraph 17 of the lease provides as follows:

" 17. That if the said premises, or any part thereof, shall for any reason or cause become vacant during the said term, the said Landlord or its representatives may re-enter the same either by force or otherwise, without being liable to prosecution therefor; and re-let the said premises as the Agent of the Tenant and receive the rent thereof; applying the same, first to the payment of such expenses as it may be put to in re-entering and then to the payment of the rent due by these presents; the balance (if any) to be paid over to the tenant who shall remain liable for any deficiency."

Paragraph 21 of the lease provides as follows:

"21. The security of Twelve Thousand ($12,000) Dollars aforementioned, shall be applied in part to the payment of the rental for the last two months of the term hereof and the remaining part of such security shall be repaid to the Tenant upon its surrender of the premises after the expiration of the term in accordance with the terms hereof, provided that the Tenant shall have complied with all the terms, covenants and conditions herein contained. Said security shall bear interest at the rate of five (5%) per cent per annum, to be payable annually and at the option of the Tenant to be deducted from the monthly rental payable when such annual interest is payable."

Paragraph 21 of the lease with reference to the return of the security to the tenant would seem to apply only to the tenant's surrender of the premises after the expiration of the term in accordance with the terms of the lease, and provided that the tenant should comply with all terms, covenants and conditions of the lease.

We do not think the issuance of the warrant worked a cancellation of the lease. (*Baylies* v. *Ingram*, 84 App. Div. 360, decided by this court.) A similar provision as to the survival of a lease after the issuance of a warrant was considered by the Court of Appeals in *Halpern* v. *Manhattan Avenue Theatre Corp.* (220 N. Y. 655). In that case the Court of Appeals wrote as follows: "The six thousand dollars was deposited ' as security ' to protect the landlord against loss and damage during the term of the lease as prescribed thereby. Many covenants of the lease, by express agreement of the parties, survive the judgment in the summary proceeding and the execution of the warrant thereon (*Michaels* v. *Fishel*, 169 N. Y. 381, 387; *Hall* v. *Gould*, 13 N. Y. 127, 134; *Anzolone* v. *Paskusz*, 96 App. Div. 188; *Feyer* v. *Reiss*, 154 App. Div. 272; *Slater* v. *Von Chorus*, 120 App. Div. 16). This action, which was commenced within four months after the beginning of the leasehold term, is premature and cannot be sustained."

Similar provisions were contained in the lease under consideration in *Rosenfeld* v. *Aaron* (248 N. Y. 437). In that case the tenant deposited $6,000 as security on the lease of a public garage. In the eighth clause of the lease in that case it was provided as follows:

"*Eighth.* In case the tenant shall violate or omit to perform any of the covenants or conditions herein contained or in case the said premises shall become vacant or shall be abandoned or deserted by the tenant, the landlord, or any other person by his order, may re-enter the same, either by force or otherwise, without being liable to any prosecution therefor and may either elect to terminate this lease or term, or may re-let the said premises at any time as the agent of the tenant or otherwise for whatever rent he shall obtain,

applying the avails of such letting first to the payment of such expenses as the landlord may be put to in re-entering and re-letting, and then to the payment of the rent due hereunder and the fulfillment of the tenants' covenants, and paying over to the tenants the balance, if any; and in case of a deficiency the tenants shall remain liable therefor."

The Court of Appeals in that case granted judgment for defendant and held as follows: " The security clause is framed to cover the violation or omission to perform any of the covenants or conditions of the lease rather than default in the payment of rent merely. The word ' re-enter,' as used in the lease, should be given its natural meaning rather than its technical common-law meaning. Thus read, it survives the dispossess proceedings.

" After re-entry, the landlord might either ' terminate this lease or term,' or ' relet said premises *at any time* as the agent of the tenant or otherwise.' The unexpired term of the lease was some seven years when the landlord took possession. We might require an election either to terminate or relet within a reasonable time [*Lenco, Inc.*, v. *Hirschfeld*, 247 N. Y. p. 50] if it were not for the fact that the landlord reserved the right to relet the premises ' at any time ' during the term of the lease. We must give due force to every word of the covenant, if possible. (*Matter of Buechner*, 226 N. Y. 440.) By the agreement of the parties, the landlord may keep the lease alive for its entire term for the purpose of reletting. Until it appears that he has, by some affirmative act, terminated the lease, his right to relet survives until August 31, 1930. It does not appear that the lease has come to an end. ' Nothing in the record justifies the conclusion that the option to relet was extinguished or abandoned.' (*Lenco, Inc.*, v. *Hirschfeld, supra,* p. 50.) The action is prematurely brought."

There can be no question that under the express terms of this lease. the $12,000 deposited was under the following express provisions contained in the 15th clause of the lease: " It being expressly understood and agreed that if the Tenant fails to comply with each and every the terms, covenants and conditions of the lease, surrenders said premises without written consent of the landlord *or is dispossessed therefrom* or abandons same prior to the expiration of this lease, then in that event the said sum of Twelve Thousand ($12,000) Dollars herein deposited as a security shall belong to the Landlord as fixed, liquidated and agreed damages, in payment of such disbursements, costs and expenses that it may undergo for the purpose of regaining possession of said premises, and the parties hereto agree to treat said deposit as liquidated damages, in payment of such costs, disbursements and expenses

sustained by it because the parties hereto can not ascertain the exact amount of costs, disbursements and expenses which the Landlord would sustain in the event of any breach or violation hereunder by the Tenant, it being expressly understood that upon the Landlord retaining and holding the said securities for the payment of such costs, disbursements and expenses that it may have been put to, that the same shall not in any manner be considered as payment for any rent due or to become due by reason of these presents, or in any manner release the Tenant from such rents to be paid, or from any of the obligations herein assumed by the Tenant."

Then, by the same clause, it was further provided that if the tenant should fully comply with all the terms of the lease, then the security was to be returned to the tenant upon surrender of the premises in good state and condition, reasonable use and wear thereof excepted, " *at the expiration of this lease.*" The language above quoted is clear and explicit. There is no ambiguity therein, and it would seem beyond argument that the parties intended just what their language would import. A like provision was found in a lease under consideration in *Feyer* v. *Reiss* (154 App. Div. 272). In the case last cited the tenant was dispossessed from the premises for non-payment of rent, as in the case at bar. The tenant then brought action for return of the security. In construing the lease in that case the court decided that the security was liquidated damages and not a penalty and incidentally also decided that the proceeding of dispossession of the tenant did not affect the covenants under which the tenant alleged the right of retention of the deposit as liquidated damages. In *Hochman* v. *Bollt* (152 N. Y. Supp. 1031) Judge LEHMAN wrote as follows: " The parties have by clear language provided that this deposit should be regarded as liquidated damages. Of course, we are not bound by their language if in fact a right to retain this sum upon a breach of the contract would constitute a penalty. Nevertheless it is the duty of the courts to give effect to the intent of the parties, and the clear expression that this sum was to be treated as stipulated damages because the parties ' cannot ascertain the exact amount of the damages ' must be given due weight. In this respect the case is almost exactly like the case of *Feyer* v. *Reiss* (154 App. Div. 272), where the court held that the deposit of two months' rent could be retained as liquidated damages. I can find nothing in this case which could reasonably lead to the view that the words used by the parties do not express their actual intent."

In the cases where a recovery by a tenant has been allowed there was either no provision for summary proceedings or the lease

expressly expired by the institution of dispossess proceedings, and there was no provision in the lease to survive the issuance of a warrant or the amount deposited as security was disproportionate to the rent and other charges to be met and discharged by the tenant. In the case at bar all such contingencies were fully included in the lease. It cannot be said that the retaining of this security is out of all proportion to the damages or the protection to which the landlord was entitled. This lease was for a long term of twenty-one years. It covered an entire three-story building on a plot 100 by 142½ feet. The annual rental for the first seven years was $33,600; for the next seven years, $36,000; and for the last seven years, $38,000. In addition to such rental the tenant was to pay all the carrying charges on the property, except interest and installment on mortgages, and was to make all repairs. If the tenant defaulted in payment of the rent and the landlord was obliged to dispossess it, the landlord would thereby take over a completely vacant building and wait for such time as it would be able to relet the premises, and with no assurance that it would obtain as much rental as that reserved in the lease. Not only was it stated that the $12,000 was to be considered as liquidated damages, but the money was deposited to protect the landlord " *as security for the faithful performance of and compliance with all the terms, covenants and conditions in the within lease contained.*" Such provision was in contemplation of the tenant remaining in possession for the full twenty-one years and paying the rent and carrying charges and keeping the premises in repair during said term. Unquestionably the damages sustained by the lessor by reason of the default of the tenant were impossible of computation until the expiration of the term. In the 21st clause of the lease hereinbefore referred to it was provided that the security deposited under the lease was to be applied by the landlord toward the payment of rent for the last two months of the twenty-one year term, after which if any balance should remain, it was to be returned to the tenant, provided the tenant should have complied with all the terms of the lease.

It seems to us, furthermore, that this action was prematurely brought. Chief Judge CARDOZO wrote for the Court of Appeals in *Hermitage Co.* v. *Levine* (248 N. Y. 333), in discussing the time when the landlord's damages can be ascertained (at p. 337), as follows: " The question is still left, how often and when shall the damage be computed? Is there to be a single cause of action in which all the damage will be computed down to October, 1945, or are there to be monthly causes of action to recover successive deficits, though conceivably new leases made when the present ones are over

will make the net result a surplus?" And (at p. 338) as follows: "None the less, in the absence of a provision that points with reasonable clearness to a different construction, a liability for damages resulting from a reletting is single and entire, not multiple and several. The deficiency is to be ascertained when the term is at an end."

In *Lenco, Inc.*, v. *Hirschfeld* (247 N. Y. 44), cited by appellant herein, although it was held that the mere provision of the lease for treating the security as liquidated damages was not necessarily binding upon the parties, nevertheless, that case decided that the action for return of the security deposited could not be instituted until the time should have arrived when the loss to the landlord was ascertainable, to wit, on the date when the lease was to terminate. This lease was not to terminate until July 1, 1949. Assuming that plaintiff is entitled to recover any portion of the security deposited, it certainly has no right to action until the termination of the lease. In *Kottler* v. *New York Bargain House, Inc.* (242 N. Y. 28, 33) the Court of Appeals wrote: "There is a distinction between a reletting by a landlord after the expiration of a term, and a reletting as agent for the tenant during the existence of the term. In the one case, the tenant, even though chargeable by force of covenant with a subsequent deficiency, is liable for damages (*Hall v. Gould*, 13 N. Y. 127). The term is at an end. In the other, he is liable for rent, what is received through a reletting being merely a payment on account. The term is still in being (*Underhill v. Collins*, 132 N. Y. 269, 272; *Jones* v. *Rushmore*, 67 N. J. L. 157; 3 Williston on Contracts, § 1403). * * * The landlord, it is true, was in possession, but not because the estate was at an end. He was in possession because the premises had become vacant, and the tenant had consented that he should have power to relet."

We think the court very properly dismissed the complaint not only upon the ground stated by the court in its opinion that under the definite agreement of the parties in the event of dispossess the deposit of $12,000 was to be retained by the landlord as liquidated damages, but also upon the further ground that this action is prematurely brought, and in no event can there be any recovery until the expiration of the lease.

The judgment appealed from should be affirmed, with costs to defendants, respondents, against plaintiff, appellant.

FINCH, P. J., McAVOY and TOWNLEY, JJ., concur; O'MALLEY, J., dissents and votes for reversal.

O'MALLEY, J. (dissenting). I dissent and vote for reversal. The action is not prematurely brought. The case appears to me to

come squarely within the decision of *Kottler* v. *New York Bargain House, Inc.* (242 N. Y. 28).

The deposit here was to be used for the disbursements, costs and expenses that might be incurred in regaining possession. The evidence is that the actual cost of removing plaintiff by summary proceedings was at most $560. The disparity between this amount and the deposit of $12,000 requires a holding that this was in the nature of a penalty. (*Lenco, Inc.*, v. *Hirschfeld*, 247 N. Y. 44.) The defendant, therefore, should recover all sums over and above those actually and necessarily incurred in removing it.

The judgment should be reversed and judgment for such difference granted for plaintiff.

Judgment affirmed, with costs.