A. STERN & COMPANY, Respondent, *v.* AVEDON & COMPANY, INC., Appellant.

First Department, December 17, 1920.

**Landlord and tenant — lease for years — oral agreement to increase rent after expiration of lease — lease implied for one year where tenant holds over and landlord accepts rent — Laws of 1918, chapter 303, amending Real Property Law, section 232, not applicable.**

Where at the expiration of a lease for a term of years the parties thereto make an oral agreement that the rent shall be increased, and the tenant remains in possession, paying the increased rent which the landlord accepts, and there is no mention or agreement concerning the terms and covenants of the original lease, the law implies a term for a year subject to all the covenants and agreements of the original lease except as to rent.

Chapter 303 of the Laws of 1918, amending section 232 of the Real Property Law, relating to the duration of leases in the city of New York, has no application to the term for one year created by implication of law.

APPEAL by the defendant, Avedon & Company, Inc., from a determination and order of the Appellate Term of the Supreme Court, entered in the office of the clerk of said court on the 1st day of April, 1920, reversing a final order of the Municipal Court of the City of New York, Borough of Manhattan, Ninth District.

*Alfred A. Walter* of counsel [*Walter & Wolff*, attorneys], for the appellant.

*David Harrison* of counsel [*Simon T. Stern* with him on the brief], for the respondent.

PAGE, J.:

The landlord was the lessee of the entire premises, occupying a portion thereof for the transaction of its business, and sublet another portion to the tenant for a term of five years commencing on the 14th day of October, 1913, at a yearly rental of $6,500. On February 7, 1917, the landlord sublet to the same tenant an additional portion of the premises for a term commencing on March 15, 1917, and ending on October

14, 1918, at a yearly rental of $10,500. These leases contain many covenants and conditions to be observed and performed by the parties thereto, among which is one that these leases are made subject to the terms of the lease made by the landlord with the owner, and reserving the right to terminate them should the option to terminate the landlord's lease be exercised by the owner. Upon the expiration of the term of these leases, the tenant remained in possession, paying the same rent, at the annual rate of $17,000, until October 14, 1919. On that date the president of the landlord called on the secretary and treasurer of the tenant, who testified to the following conversation: The landlord said: "'Mr. Avedon, for the next year I will have to increase your rent.' I said: 'Go easy, Mr. Stern,' and he said: 'Well, they increased me $8,000, so I feel that as long as you are the major tenant, that we will have to make you share the major part of that increase.' I said: 'How much will that be?' He said: 'Well, I have been thinking about it and I cannot possibly think of letting you down on anything less than $6,500 a year.' Well, I tried to urge him to make it less, but he did not, and we agreed after a lot of dickering that the increase was to be $6,500 a year and that was over with."

The tenant paid rent for the month ending November fourteenth at the rate of $23,500. The landlord had been negotiating with the owner for a lease with a long term. The tenant succeeded in getting such a lease from the owner, and under the provision of the old lease the owner on October 29, 1919, notified the landlord that his lease was canceled effective January 31, 1920. On November 8, 1919, the landlord wrote the defendant: "This is to inform you that on and after November 15th, 1919, the rental for the premises you now occupy, 448 Fifth Avenue, as a monthly tenant, will be at the rate of Seven thousand five hundred $7,500) Dollars per month. Please let us know on or before the 12th day of November, 1919, of your decision in the matter so that we may make arrangements accordingly."

In the Municipal Court the landlord contended that on or about October 14, 1918, the time of the expiration of the five-year term, an express agreement was made that the tenant should remain in the premises as a monthly tenant. The

evidence sustained the decision of the justice that such agreement was not made, and as he granted a final order in favor of the tenant he must have held that the tenant held over for a term of one year under the covenants of the lease as it existed prior to October 15, 1918, except as orally modified in respect to the amount of rent; and also that after October 15, 1919, the tenant held over under an implied lease for the term of one year at the increased rental but otherwise subject to the covenants of the original lease.

The learned Appellate Term (111 Misc. Rep. 372), adopting the fact that there was no express agreement as to a monthly tenancy, held that the situation of the parties on October 14, 1919, was that of an intending lessor and lessee who undertake to create orally a tenancy for a year, which they were prevented from doing (at that time) by the special Statute of Frauds relating to New York city (Laws of 1918, chap. 303, amdg. Real Prop. Law, § 232).* There can be no question but that the tenant up to October 14, 1919, was in possession of the premises as a hold-over tenant for the period of one year subject to all the terms and conditions of the written lease except as to term. (*Schuyler* v. *Smith,* 51 N. Y. 309, 313; *Haynes* v. *Aldrich,* 133 id. 287, 289; *Kennedy* v. *City of N. Y.,* 196 id. 19, 23.) The question, therefore, to be considered is whether a new agreement was made by the parties for the letting of that portion of the premises theretofore occupied by the tenant, or whether the tenant held under a lease implied by law, for the term of one year at an increased rental, but otherwise subject to the covenants and conditions of the original written leases. It is to be noted that in the conversation between the landlord and tenant herein nothing was said as to the term, nor as to the payment of the rent, whether monthly, quarterly, semiannually in advance or at the end of the term, whatever that might be. The original leases were carefully drawn and contained numerous covenants and agreements, among which was a covenant by the tenant to pay the rent in monthly installments in advance on the fifteenth day of each month; for the tenant to comply with all rules, ordinances and regulations of the city government and of any and all departments

---

* Since amd. by Laws of 1920, chap. 130.— [REP.

and bureaus thereof, and of the New York board of fire underwriters, at its own cost and expense; not to assign or underlet without the written consent of the landlord; not to occupy or suffer or permit the premises to be occupied for any business or purposes deemed disreputable or extra hazardous on account of fire on penalty of damages and forfeiture of the lease; the usual covenants in regard to the destruction of the premises wholly or in part by fire; the right of the landlord to enter for the purpose of making necessary repairs; to show the premises to persons wishing to hire or purchase the same; to place " to let " or " for sale " signs; on dispossession for non-payment of rent or the premises becoming vacant, the right of the landlord to re-enter and let the premises as the agent and for account of the tenant, who is to remain liable for any deficiency, and that the warrant in such proceedings shall not operate to discharge the tenant from his obligations under the lease; as to placing of signs; damages sustained by water by reason of breakage or stoppage, or breakage from the water or soil pipes; right to cancel the lease upon notice and the effect of such notice; rights to display its goods in certain portions of the demised premises; for the landlord to furnish heat without charge; the tenant to purchase electric current from the landlord; tenant to pay a portion of the wages of a night porter; to pay a just proportion of the charges for water; subordination of the lease to that between the landlord and owner; tenant to make a deposit as security which is to be forfeited if the tenant breaks any of the conditions, covenants or terms of the lease, and to be repaid with interest if the tenant performed all the terms and covenants and conditions, with other less important agreements. Not a word was said as to any of these covenants and agreements. The landlord still holds the security deposited with him.

It is not to be assumed that either party intended to forego and relinquish the benefit and protection of these covenants and agreements, but rather that they were silent as to them for the reason that if the tenant held over after the expiration of his term and the landlord elected to accept him as a tenant the law would imply a term for a year subject to all the covenants and agreements of the former lease except as changed by the increase in rent.

While counsel have not cited any case in the higher courts where this condition has arisen, authority exists for the holding above stated. Mr. Justice LAUGHLIN at Special Term held in a similar case that the terms of the original lease applied where the tenant held over at an increased rental, and that the tenants were required to pay taxes under the terms of the original lease. (*Coatsworth* v. *Ray*, 52 N. Y. Supp. 498.) Mr. Justice SCOTT writing for the Appellate Term in *Stein* v. *Sutherland* (92 N. Y. Supp. 314) held where a tenant held over after a notice of an increase of rent, that the law implied an agreement for a year at the increased rental. (See, also, *Commercial Cable Bldg. Co.* v. *McKenna*, 168 N. Y. Supp. 13.) In my opinion these cases were correctly decided. There is nothing contrary to this ruling in *United Merchants' Realty & Improvement Company* v. *Roth* (193 N. Y. 570). In that case the landlord made a lease to a new tenant to take effect on the expiration of the lease of the defendant. The defendant remained in occupancy of the premises after the expiration of his term, and it was held that the right of election to treat the tenant as a trespasser, or to allow him to remain, and to become a tenant for a new term, did not pass from the landlord to the new lessee.

It is true that the tenant by remaining in possession does not thereby secure the right to a new term. He is a trespasser, and his right only comes into existence if the landlord elects to allow him to remain and accepts him as a tenant. When, however, the landlord does accept him, his election is conclusive upon both parties; neither can then claim that the tenant is in possession as a trespasser, for the law implies a lease for a new term of one year, subject to the covenants and conditions of his former lease except as changed. The tenant by remaining in possession has become liable for the increased rent by his implied consent; the landlord having accepted the rent and permitted the tenant to remain in possession has recognized his right as a tenant. From these conditions the law implies the term, covenants and conditions of the lease. Therefore, this being an agreement by implication of the law, chapter 303 of the Laws of 1918 does not apply. (*Souhami* v. *Brownstone*, 189 App. Div. 1.)

The determination of the Appellate Term should, therefore,

be reversed and the final order of the Municipal Court affirmed, with costs to the appellant in this court and in the Appellate Term.

CLARKE, P. J., DOWLING, SMITH and GREENBAUM, JJ., concur.

Determination reversed and final order of Municipal Court affirmed, with costs to appellant in this court and in the Appellate Term.