HOWARD S. KENNEDY, Landlord, *v.* VAHAN KENDERIAN, Tenant.

City Court of Albany, November 12, 1946.

*Nicholas A. Caimano* for landlord.

*John McCall* for tenant.

HERZOG, J. This is a summary proceeding under article 83 of the Civil Practice Act to remove the tenant on the ground he holds over and continues in ·possession without permission of the landlord. Tenant occupies the premises under a written lease with landlord's predecessor in title from May 1, 1945, to April 30, 1946. On May 1, 1946, tenant sent Joyce, the former owner, a check for $36 for the rent. Mrs. Joyce subsequently cashed this check. Landlord bought the premises on May 20, 1946, and immediately applied for an Office of Price Administration certificate authorizing removal of respondent. The defense is that tenant was a holdover tenant for another year. The case was tried by the court without a jury.

The general rule applicable to this type of case was established in *Schuyler* v. *Smith* (51 N. Y. 309, 315) wherein it is stated: '' The safe and just rule I believe to be the one established by authority, that a tenant holds over the term at his peril; and the owner of the premises may treat him as a trespasser or as a tenant for another year upon the terms of the prior lease, so far as applicable.''

It should be noted particularly that the option of election is given to the landlord and to him alone. (*Haynes* v. *Aldrich*, 133 N. Y. 287, 289.)

In accordance with the above rule, this case is narrowed to the sole question of whether or not the landlord exercised her option to regard the tenant as a holdover for another year. Tenant contends that by acceptance of the rent for the month of May, the landlord exercised her option to treat respondent as a tenant and that, therefore, the tenancy of the respondent is one for an additional year to April 30, 1947. If Joyce did so exercise her option, it would be irrevocable and binding upon the landlord in this proceeding. (*Stern & Co.* v. *Avedon & Co., Inc.*, 194 App. Div. 433, affd. 231 N. Y. 546; *Haas* v. *O'Connell*, 128 Misc. 22; *Scully* v. *Roche*, 76 Misc. 458, 460.) The increasing number of these cases before this court makes it advisable to state briefly the rules which I think are applicable.

It is undoubtedly true that sentences and phrases can be excerpted from a large number of cases in many jurisdictions, which, standing by themselves, sustain tenant's position. These statements, taken out of their context, would make it appear that an acceptance of rent, by itself, irrevocably binds the landlord despite any other considerations. These are summed up in the rule quoted in the Annotation in 64 American Law Reports 309, where it is said: " It is generally held that if, after the expiration of a lease the tenant pays rent and the landlord accepts the payment, the lease is extended." (See, also, the following cases: *Clarke* v. *Howland*, 85 N. Y. 204; *Stern & Co.* v. *Avedon & Co., Inc., supra; Melrose Operating Co.* v. *Porter*, 256 Mass. 138; *Buschman Co.* v. *Garfield Co.*, 97 Ohio St. 54; *Vanderford* v. *Foreman*, 129 N. C. 217; *Allen* v. *Montgomery*, 25 Ga. App. 817; *Brown* v. *Kayser*, 60 Wis. 1; *Faraci* v. *Fassulo*, 212 Mich. 216.)

A careful reading of these cases shows that they do not actually hold as strongly as tenant contends. The rule, supported by strong authority, seems to be as stated in Corpus Juris (Vol. 35, Landlord and Tenant, § 169, p. 1033): " While, as heretofore shown, the payment by and acceptance of rent from a tenant holding over is generally held to create a tenancy for another term and to renew all rights and obligations incident to the relationship of landlord and tenant under the original lease, the presumption so raised is not conclusive but may be overcome by other circumstances attending the transaction which show that such was not the intention of the parties." See, also, Corpus Juris (Vol. 35, Landlord and Tenant, § 168, pp. 1030–1031) and again in *Cole* v. *Sanford* (77 Hun 198, 199–200):

" The landlord having permitted the tenant to occupy the leased premises after the expiration of the term, and having accepted a month's rent from him at the rate stipulated in the lease, a presumption is raised that the lease had been renewed for another year. * * * The presumption that the lease was renewed for another year, arising from the landlord permitting the tenant to hold over and accepting rent from him, is a rebuttable one * * *." See, also, *Ernest* v. *Holzner* (130 N. Y. S. 442, 445) where the court said: " It admits of no doubt that, unless the undisputed evidence clearly shows such an option, the fact whether the landlord exercised his option or took possession in his own right is always a question of fact to be determined by the court or jury, as the case may be. * * * I have been unable to find a case determining what is necessary to show the exercise on the part of the landlord of his option to hold a tenant * * *." (See, also, *Faraci* v. *Fassulo, supra,* and 1 Tiffany on Real Property [3d ed.], § 182, p. 292.) It thus becomes necessary to apply this rule to the facts of the instant case. Some confusion is noted in the authorities in the application of this rule. I think the confusion arises from statements in cases where rent was accepted for a period of several months without reservation and the courts have almost unanimously said that this showed that the election of the landlord was to consider the tenant as a holdover tenant. The correct rule is that this election must be exercised at the time of the acceptance of the first rent and that evidence of the acceptance of other rent was simply a further indication that in accepting the initial payment, the landlord intended to consider the tenant a holdover.

In this case, rent was only accepted for one month. However, Mrs. Joyce testified that in February, when she tried to sell her house, she notified the tenant that she would not renew the lease. Tenant denied that he received such notification but he did know that Joyce was trying to sell the premises. The court, taking judicial notice of the housing conditions at the present time and that many purchasers now buy property only for the purpose of " getting a roof over their heads " as soon as possible, finds as a fact that Mrs. Joyce did give such notice to the tenant. Therefore, when she accepted the rent on the 1st of May, which was sent through the mail by a check, I believe that her intention was not to consider Kenderian as a holdover tenant but rather as a tenant at will or by sufferance. Therefore, the landlord, who purchased the premises, took them subject to the existing tenancy and had the right to dispossess by giving proper notice. He obtained a certificate of the Office of

Price Administration permitting eviction and served proper notice and, therefore, is entitled to a final order. It appears from this holding that invariably the tenant fares most poorly in this type of case even when he wants to retain possession and despite the tendency of modern rulings. (1 Tiffany on Real Property, § 175, p. 282.)

Proof was taken at the trial of the circumstances of the parties. This was done for the purpose of determining the length of the stay which is now authorized under the recent additions (Civ. Prac. Act, § 1435, subds. 4–8).

Final order is granted; execution stayed to December 2, 1946.