CHIAT/DAY INC., ADVERTISING, Respondent, v ROUHOLLAH KALI-MIAN et al., Appellants.

First Department, December 20, 1984

## APPEARANCES OF COUNSEL

*Brian J. Gallagher* of counsel (*Adam Walinsky* and *Deborah W. Feinberg* with him on the brief; *Kronish, Lieb, Shainswit, Weiner & Hellman,* attorneys), for appellants.

*Steven J. Ahmuty, Jr.,* of counsel (*Gregory D. Frost* with him on the brief; *Bower & Gardner,* attorneys), for respondent.

## OPINION OF THE COURT

Asch, J.

Defendants, the Kalimians (landlord), own and manage a commercial building at 79 Fifth Avenue, in which plaintiff, Chiat/Day Inc., Advertising (tenant), is a tenant pursuant to a lease dated August 11, 1982, and a side letter agreement to the lease also entered into on August 11, 1982. The lease was for the 14th, 15th and 16th floors of the building and the tenant is currently in control of two floors in the building for which it is paying rent, and it is to take over the third leased floor at a later time. The lease provides that the tenant is to pay a monthly fixed rent plus an additional rent based on the landlord's taxes and labor rates.

Plaintiff's performance of its obligations under the lease was secured by the personal guarantee of its president, Jay Chiat, and an irrevocable letter of credit for $300,000. The letter of credit provided that defendants could demand payment by: "a notarized statement signed either by Rouhollah Kalimian or Albert Kalimian certifying that the tenant Chiat/Day Inc., Advertising has defaulted beyond the expiration of any applicable grace period under that certain lease, dated August 11, 1982, between Rouhollah Kalimian and/or Albert Kalimian, as landlord, and Chiat/Day Inc., Advertising, as tenant, covering premises in the building known as 79 Fifth Avenue, New York, New York."

The landlord asserts that it is in the process of renovating the building at great expense and that tenant was aware, when it entered into the lease, that the renovations were not yet completed. Plaintiff asserts that after it took possession of the demised premises, the renovations which had been promised in the lease were not completed in compliance with defendants' earlier representations and obligations set forth in the lease and side letter agreement.

Thus, the tenant brought suit complaining of certain physical conditions in the building and seeking money damages and specific performance based upon fraudulent misrepresentation and breach of contract by defendants. Plaintiff moved by order to

show cause for an order, *inter alia,* preliminarily enjoining the defendant from drawing upon the irrevocable letter of credit and the guarantee of Jay Chiat provided by the tenant as security for its leasehold obligations. In its supporting papers on this motion the tenant asserted it was being overcharged rent. In the lease the landlord agreed to pay for up to $750,000 for renovations to tenant's leased premises. The tenant asserted that this available renovation allowance was really a loan and that a portion of the monthly rent being charged consisted of a repayment of interest on this loan. Tenant alleged that the rent it was paying included an interest charge on $200,000 of as yet unadvanced renovation money. (The tenant had been concededly advanced $300,000.) Special Term in the first order herein, entered October 18, 1983, denied tenant's motion for preliminary relief. However, the court *sua sponte* ruled that the amount of rent provided for in the lease included an interest charge on the renovation allowance and that interest was being charged by the landlord on a greater amount of renovation money than had actually been advanced to tenant. Thus, Special Term directed the landlord to return to tenant that part of tenant's rent which represented "additional rentals" resulting from an "excessive interest charge" with interest thereon and directed the landlord in the future to include in the rent an interest charge on only the amount of money that had actually been advanced to the tenant. In the second order of May 15, the court directed that the overcharges were to be returned with 9% interest thereon. In addition, as a result of the second motion by the tenant requesting a preliminary injunction, Special Term, in its May 15, 1984 order, reversed itself and granted tenant's request for a preliminary injunction enjoining the landlord from executing upon the tenant's irrevocable letter of credit and the guarantee of Jay Chiat during the pendency of the action.

▆▆ Special Term was in error when it directed defendant to return "additional rentals" and directed them to charge interest in the future only on moneys advanced to the plaintiff. Special Term also was in error in enjoining defendants from drawing on the letter of credit issued for defendants' benefit or executing upon the guarantee of plaintiff's principal, Jay Chiat.

▆ It is a fundamental principle that the letter of credit is completely independent of the contract between the customer and the beneficiary (*O'Meara Co. v National Park Bank,* 239 NY 386, mot for rearg den 240 NY 607; *Shanghai Commercial Bank v Bank of Boston Int.,* 53 AD2d 830). The tenant herein is not a party to the letter of credit contract between the bank and the landlord. Thus, as the purchaser of a letter of credit, the tenant

is not a party to the letter of credit transaction and cannot enjoin the bank from paying, or the beneficiary from demanding, the funds pursuant to the letter of credit (see *Foreign Venture Ltd. Partnership v Chemical Bank,* 59 AD2d 352, 355-356). The letter of credit, as noted above, provided that defendants could draw upon it simply by presenting a notarized statement that plaintiff defaulted under the lease.

As Bernard H. Goldstein has pointed out in his article, Use of Letters of Credit in Real-Estate Transactions, published in the New York Law Journal (Nov. 14, 1984, p 1, col 3, p 1, col 4-p 2, col 3): "Such a letter is sometimes colloquially called a 'suicide' letter of credit. The letter of credit should require that a sight draft drawn against it will be accepted upon the presentation of the draft alone * * * In these circumstances only 'active intentional fraud' could be asserted to defeat payment of the draft (*Spiegal [sic] Novelty Co., Inc. v. Bankers Trust,* NYLJ, 10-24-84, p. 11 col. 1, Sup. N.Y. Co.)."

Section 5-114 of the Uniform Commercial Code provides in pertinent part: "(1) An issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and the beneficiary." and further, at section 5-114 (subd [2], par [b]): "in all other cases as against its customer, an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery or other defect not apparent on the face of the documents but a court of appropriate jurisdiction may enjoin such honor." Although plaintiff asserts "fraud in the transaction", in construing the nature of this requirement the courts have uniformly held that payment of a letter of credit may be enjoined only where "active intentional fraud" is shown (*Hohenberg Co. v Comitex Knitters,* 104 Misc 2d 232). In addition, the case law distinguishes between mere disputes about performance of a contract or breach of warranty and the active intentional fraud which rises to the level of fraud in the transaction (see *Mount Carmel Energy Corp. v Marine Midland Bank,* 82 AD2d 729; *Spiegel Novelty Co. v Bankers Trust,* NYLJ, Oct. 24, 1984, p 11, col 1, *supra;* see, also, Goldstein, Use of Letters of Credit in Real-Estate Transactions, *op. cit.*).

The underlying lease between the tenant and the landlord cannot be said to be so fraudulent or devoid of value to the tenant that it could be said to vitiate the entire underlying transaction (*Sztejn v Schroder Banking Corp.,* 177 Misc 719).

The tenant herein has occupied and continues to occupy the premises under the lease. The tenant does not claim to be constructively evicted and has continued to pay rent. All the tenant has alleged are breaches of certain subsidiary provisions of the lease, which can be remedied by monetary damages. Additionally, there can be no claim of fraud here in the presentment of documents since no documents have ever been presented by the landlord for payment. Any allegation that a demand by the landlord would be fraudulent, if made, is totally speculative and injunctive relief cannot be granted on such speculation (see *KMW Int. v Chase Manhattan Bank,* 606 F2d 10, 14).

It would appear that defendants are perfectly solvent and are available for a plenary action for damages. Thus, "[d]amages would appear to be an adequate remedy if plaintiff's rights have been interfered with in any way. There is thus no ground for an injunction" (*Foreign Venture Ltd. Partnership v Chemical Bank, supra,* at p 356; *Frey & Son v Sherburne Co.,* 193 App Div 849, mot for rearg den 194 App Div 960).

When Special Term directed defendants, in its order of October 18, 1983, to return additional rentals and directed defendants to charge interest in the future only on money advanced to plaintiff, it, in effect, *sua sponte* converted plaintiff's motion to one for summary judgment and improperly granted such judgment on factual issues raised in the affidavits submitted by the parties regarding the intentions of the parties and the contested interpretation of the rent provisions contained in the lease and side letter agreement.

The drastic remedy of summary judgment should not be granted when there is any doubt as to the existence of a triable issue of fact or where such an issue is even arguable (*Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395).

Thus, in the affidavit of Mr. Chiat, submitted in support of plaintiff's motion, alleging that tenant was being overcharged rent, Mr. Chiat asserted that the lease and side letter agreement between the parties provided that tenant could "borrow" money from the landlord to pay for the cost of permanent alterations and improvements to tenant's leased premises and that the tenant was to "repay" this money to the landlord in its rent. Mr. Chiat further alleged that although tenant had only drawn upon $300,000 of the available money, it was being charged a rental as if it had drawn upon $500,000. Rouhollah Kalimian submitted an affidavit in opposition in which he asserted that the renovation money available to tenant was *not* intended to be a loan nor did the rental amount specified in the lease include any

payback of any loan. Rather, Mr. Kalimian asserted, it was the intention of the parties that the renovation money be given to tenant outright upon tenant's request. Instead of the landlord expending the money to renovate tenant's leased premises, the landlord was providing tenant with this money so that tenant could renovate its premises to its own designs. Mr. Kalimian further asserted that in the final lease negotiations, tenant requested that this renovation money be described as "loans" for the purpose, according to Mr. Kalimian, of claiming a portion of its rent to be a loan repayment so as to secure a lower occupancy tax from the city. However, Mr. Kalimian asserted, it was understood that whatever the characterization of the renovation money, the total rental amount would remain the same. Thus, he alleges that regardless of the description of the renovation money as a renovation allowance or as a loan, it was expressly stated in the side letter agreement that these funds "shall not in any manner reduce the aggregate amount payable by tenant to landlord in connection with the lease".

Thus, the opposing affidavits herein presented contradictory accounts of the facts and intentions of the parties with regard to the renovation money and the connection, if any, of the renovation money or loan to the rental amount specified in the lease. Since factual issues were raised regarding the intentions of the parties and since the interpretation of the rent provisions contained in the lease and side letter agreement were contested, Special Term erred in granting tenant, in effect, summary judgment on this issue. In addition, Special Term did so without first advising the parties that it intended to treat the motion as one for summary judgment and giving them an opportunity to present further evidence and testimony. Thus, as noted by defendants upon this appeal, the same provision of the side letter agreement which contains a "loan" language required tenant to deliver and execute a promissory note within 60 days obligating tenant to repay the renovation money advanced. However, defendants assert upon appeal that they had no opportunity to inform Special Term that no such promissory note was ever delivered or executed. Defendants also assert that they were denied the opportunity to present further evidence and testimony. Thus, that provision of the court's order of October 18, 1983, in which it made a factual determination that tenant was being charged interest on a loan, was improperly granted.

Accordingly, the order of the Supreme Court, New York County (L. Grossman, J.), entered October 18, 1983, which, *inter alia,* granted plaintiff's motion solely to the extent of directing defendant to return "additional rentals" paid by plaintiff and

directing defendant to charge interest in the future only on money advanced to plaintiff, should be modified, on the law, to vacate these directives, and otherwise affirmed, with costs.

The order of the Supreme Court, New York County (L. Grossman, J.), entered May 15, 1984, which, *inter alia,* enjoined defendants from drawing on a letter of credit issued for defendants' benefit or executing on the guarantee of plaintiff's principal, Jay Chiat, pending termination of this action, should be modified, on the law and facts and in the exercise of discretion, to vacate such injunctive relief and that portion of the order which directs "overcharges" paid by plaintiff to be returned with interest, and otherwise affirmed, with costs.

SANDLER, J. P., ROSS, MILONAS and ALEXANDER, JJ., concur.

Order, Supreme Court, New York County, entered on October 18, 1983, unanimously modified, on the law, to vacate the specified directives and otherwise affirmed, and the order of said court, entered on May 15, 1984, unanimously modified, on the law and facts and in the exercise of discretion, to vacate such injunctive relief and that portion of the order which directs "overcharges" paid by plaintiff to be returned with interest, and otherwise affirmed. Appellants shall recover of respondent one bill of $75 costs and disbursements of these appeals.