■ TITLESERV, INC., Appellant, v MICHAEL ZENOBIO, JR., et al., Respondents. [619 NYS2d 765] —In an action, *inter alia,* to recover damages for breach of a lease, the plaintiff appeals, as limited by its brief, from so much of an order of the Supreme Court, Nassau County (Segal, J.), dated December 17, 1993, as, upon reargument, denied the branch of its motion which was for a preliminary injunction restraining the defendants from drawing upon the plaintiff's $100,000 letter of credit that was given to them as security.

Ordered that the order is affirmed insofar as appealed from, with costs.

On March 1, 1993, the plaintiff, Titleserv, Inc. (hereinafter the tenant), entered into a lease with the defendant T.A.T. Property (hereinafter the landlord) to rent offices at 45 Executive Drive, Plainview, New York. Article 27 (a) of the lease provided that the landlord could terminate the lease if the tenant failed to cure, within five days after receipt of written notification, a default of nonpayment of rent. Article 47 of the lease provided: "Tenant has deposited with Landlord on the signing of this Lease the sum set forth in Paragraph '1(g)'

above as security for the performance of Tenant's obligation under this Lease [a letter of credit in the sum of $100,000]. * * * Landlord shall have the right to apply any part or all of said security deposit to remedy any default of Tenant hereunder, including but not limited to, payment of any fixed rent, additional rent, holdover rent, service fees or other debts of Tenant due to Landlord, repair of all damage to the Premises or repair or replacement of damage to other property of Landlord caused by Tenant, or any of its agents, employees, invitees or licensees, or expenses of rerenting and redecorating the Premises in the event Tenant vacates same prior to the expiration of the term upon fifteen (15) days notice by Landlord. If Landlord applies any part of said security deposit to remedy any default of Tenant, Tenant shall upon demand deposit with Landlord the amount so applied so that Landlord shall have the full deposit on hand at all times during the term of this Lease."

The tenant purchased a $100,000 irrevocable letter of credit from the Long Island Savings Bank, which provided that it could not be drawn upon unless the landlord's draft was accompanied by an affidavit, signed by a trustee of the landlord, stating that the tenant was in default of the lease and that "such default [had] remained uncured for a period or periods defined in the Lease for the curing of the applicable default(s)."

On or about November 1, 1993, the tenant commenced this action alleging that the landlord had breached the lease because of its failure to repair the roof. On or about November 8, 1993, the landlord sent the tenant three letters declaring the tenant in default for, *inter alia,* nonpayment of rent. By an order to show cause dated November 12, 1993, the tenant moved for, *inter alia,* a *Yellowstone* injunction and a preliminary injunction restraining the landlord from drawing upon the letter of credit. On November 12, 1993, the tenant obtained a temporary restraining order pending a hearing on the motion.

On or about November 16, 1993, the landlord presented three drafts for $40,000; $12,304.01; and $41,880.31 to the Long Island Savings Bank accompanied by three affidavits from Michael Zenobio, Jr., a trustee of the landlord, affirming that the tenant was in default and had remained so for the period defined in the lease for curing the applicable defaults.

Initially, the Supreme Court denied the tenant's motion for injunctive relief in its entirety. Upon reargument, the Su-

preme Court granted the tenant a *Yellowstone* injunction, but denied the branch of the motion which was for a preliminary injunction restraining the landlord from drawing upon the letter of credit. The Supreme Court found that once the period for curing the default had expired, the landlord could either terminate the lease or draw upon the letter of credit. The Supreme Court also found that Article 47 of the lease did not require the landlord to notify the tenant before drawing upon the letter of credit if the default was for nonpayment of rent. The Supreme Court further found that a *Yellowstone* injunction tolls the period for curing the tenant's default to the extent of enjoining the landlord from exercising its right to terminate the lease during the pendency of the action. However, the Supreme Court found that the granting of a *Yellowstone* injunction in this case would not preclude the landlord from drawing upon the letter of credit because the purpose of a *Yellowstone* injunction is limited to the prevention of a specific irreparable harm (i.e., loss of the tenant's leasehold) and because the landlord's drawing upon the letter of credit in this case would not result in irreparable harm to the tenant.

The Supreme Court correctly denied the preliminary injunction. It is a fundamental principle that a letter of credit is completely independent of the contract between the purchaser and the beneficiary *(see, O'Meara Co. v National Park Bank,* 239 NY 386; *Chiat/Day Inc., Adv. v Kalimian,* 105 AD2d 94, 96). "[A]s the purchaser of a letter of credit, the tenant is not a party to the letter of credit and cannot enjoin the bank from paying, or the beneficiary from demanding, the funds pursuant to the letter of credit" *(Chiat/Day Inc., Adv. v Kalimian, supra,* at 96-97; *see also, Foreign Venture Ltd. Partnership v Chemical Bank,* 59 AD2d 352, 355-356). "The only way for the purchaser of a letter of credit to succeed on an action to defeat payment on that letter of credit is to demonstrate fraud in the transaction or presentment of the letter" *(410 Sixth Ave. Foods v 410 Sixth Ave.,* 197 AD2d 435, 436; *see also,* UCC 5-114 [2]; *United Bank v Cambridge Sporting Goods Corp.,* 41 NY2d 254).

Here, the tenant has not alleged fraud in the transaction or presentment of the letter of credit. Thus, the tenant is precluded from enjoining the landlord from drawing upon the letter of credit. In addition, the granting of a *Yellowstone* injunction does not mandate an opposite result. The purpose of the *Yellowstone* injunction is to prevent termination of the lease because, once the lease expires, a court is powerless to revive it absent a showing of fraud, mutual mistake, or some

other acceptable basis for the reformation of a contract *(First Natl. Stores v Yellowstone Shopping Ctr.,* 21 NY2d 630, 637). A *Yellowstone* injunction prevents termination of the lease by tolling the running of the period for curing a default *(see, Post v 120 E. End Ave. Corp.,* 62 NY2d 19, 26). It is unnecessary in this case to extend the *Yellowstone* injunction to preclude the landlord from drawing upon the letter of credit because a court is not powerless to remedy any damage caused to the tenant by the landlord's drawing upon the letter of credit *(see, Foreign Venture Ltd. Partnership v Chemical Bank, supra,* at 356; *see also, Key Intl. Mfg. v Stillman,* 103 AD2d 475, 479, *affd as mod* 66 NY2d 924).

Contrary to the tenant's contention, this result does not contradict our recent decision in *Waldbaum, Inc. v Fifth Ave. of Long Is. Realty Assocs.* (200 AD2d 664), which is factually distinguishable from this case. *Waldbaum* involved the option to renew a lease, which is an appropriate subject for a *Yellowstone* injunction.

Finally, we note that the Supreme Court incorrectly found that the landlord was not required to notify the tenant before drawing upon the letter of credit. Article 47 of the lease provides that, upon 15 days notice, the landlord had the right to use any part or all of the security deposit to remedy any default by the tenant. However, because the tenant has been aware of the landlord's intention to draw upon the letter of credit for more than a year, the issue of notice is academic. Bracken, J. P., Copertino, Pizzuto and Hart, JJ., concur.