OPINION OF THE COURT
Jack M. Battaglia, J.
In this commercial holdover proceeding, petitioner James Pinto Photography, Ltd. seeks to recover possession of premises described as “all rooms, First Floor, 7513 13th Avenue, Brooklyn,” occupied by respondents Constance Sheppard and Sheppard Music School, Inc. Asserting that the premises are held “under monthly hiring,” petitioner served a 30-day notice that purports to terminate respondents’ tenancy as of January 31, 2006. Respondents contend that they hold the premises pursuant to a written lease that does not expire until July 31, 2010. Respondents have moved for summary dismissal of the petition. The motion is denied.
The parties executed a written agreement of lease dated as of August 1, 2002 with a three-year term commencing on that date and expiring on July 31, 2005. The stated rent is $1,800 per month, and, as the name of the corporate respondent suggests, the premises are used for “music lessons, excluding any brass instruments.” The lease states:
“Provided the Tenant is not in default under any terms of the lease, it shall have the option to renew this lease for a period of five years provided the Tenant gives Landlord 180 days notice in writing by Certified Mail-Return Receipt Requested of its intention to renew the option (sic). See attached schedule of rents for renewal term.”
There is no dispute that respondents never gave petitioner notice in writing of an intention to renew the lease. In an affidavit submitted in support of the motion, John Sheppard, president of the corporate respondent, states that, in August 2005, after expiration of the lease according to its terms, respondents submitted a rent check for $1,800. According to Mr. Sheppard, during that month, “the first month of the extension period, the landlord demanded the increased rent.” (Defendant’s affidavit in support of cross motion for summary judgment, dated Apr. 27, 2006, 1117.) The “schedule of rent for renewal term” included in the lease states a monthly rent of $1,863 for the period August 1, 2005 through July 31, 2006.
Again, according to Mr. Sheppard, but supported with documentary evidence, in September 2005, respondents paid *294 $1,926 to petitioner, representing the “increased rent” for September and the balance owed for August, as indicated on the memo line on the check. In October, November and December, respondents paid and petitioner accepted $1,863. Mr. Sheppard states that respondents tendered rent payments for January, February and March 2006, but petitioner refused them. “At one point [petitioner’s representative] remarked that there was no lease.” (Id. H 9.)
In opposition to the motion, petitioner submits the affidavit of Johnnie Pinto, its president, which conspicuously fails to address Mr. Sheppard’s evidence as to the payment and acceptance of rent for five months, after the stated expiration of the lease, at the amount specified for the first year of the renewal term. Indeed, except for Mr. Sheppard’s reference to petitioner’s “demand” for the “increased rent” and to Ms. Pinto’s “remark” about the absence of a lease, neither of the two affidavits submitted by Mr. Sheppard, nor the affidavit submitted by Ms. Pinto, describes any written or oral communication between the parties concerning the expiration or renewal of the lease or the payment and acceptance of rent in any amount.
Respondents argue on this motion that equitable considerations require that their failure to provide notice of renewal be excused, and that the lease be deemed renewed in accordance with its terms. Respondents point to “improvements to the leased space . . . at a cost of at least $10,000, in order to customize the space for our use as a music school” and to established “business goodwill in the neighborhood and [with] our students.” (Defendant’s affidavit in support of cross motion for summary judgment, dated May 17, 2006, H1Í 2-3.) They maintain that, in any event, by its demand and acceptance of rent at the renewal rate, petitioner waived notice of renewal in accordance with the lease. (Reply affirmation in further support of defendant’s cross motion for summary judgment 112.)
The court concludes that neither equitable considerations nor principles of waiver provide the proper framework under the facts presented for assessing the respondents’ claim to continued occupancy of the premises. Respondents may, however, attempt to establish an express or implied agreement that would entitle them to an additional term, but a trial will be required for that purpose.
Equitable Considerations
“Any right a tenant has to renew a lease is governed by the terms of the agreement.” (Pepe v Stock, 24 AD3d 527, 528 [2d *295 Dept 2005]; see also Dime Sav. Bank of N.Y. v Montague St. Realty Assoc., 90 NY2d 539, 543 [1997].) “It is a settled principle of law that a notice exercising an option is ineffective if it is not given within the time specified.” (J.N.A. Realty Corp. v Cross Bay Chelsea, 42 NY2d 392, 396 [1977]; see also Souslian Wholesale Beer & Soda v 380-4 Union Ave. Realty Corp., 166 AD2d 435, 437 [2d Dept 1990].)
Nonetheless,
“[e]quity will relieve a tenant from a failure to timely exercise an option in a lease to renew or purchase if (1) the tenant in good faith made substantial improvements to the premises and would otherwise suffer a forfeiture, (2) the tenant’s delay was the result of an excusable default, and (3) the landlord was not prejudiced by the delay.” (Vitarelli v Excel Automotive Tech. Ctr., Inc., 25 AD3d 691, 691 [2d Dept 2006]; see also J.N.A. Realty Corp. v Cross Bay Chelsea, 42 NY2d at 397-400; Sy Jack Realty Co. v Pergament Syosset Corp., 27 NY2d 449, 453 [1971]; Jones v Gianferante, 305 NY 135, 138-139 [1953].)
An “excusable default” in exercising an option to renew within the time specified may result from “an honest mistake or inadvertence” (see Souslian Wholesale Beer & Soda v 380-4 Union Ave. Realty Corp., 166 AD2d at 437; Nanuet Natl. Bank v Saramo Holding Co., 153 AD2d 927, 928 [2d Dept 1989]) and even negligence (see J.N.A. Realty Corp. v Cross Bay Chelsea, 42 NY2d at 400). In considering whether the tenant would “suffer a . . . forfeiture,” a court will consider, not only improvements made by the tenant to the premises, but also the tenant’s “goodwill. . . with the community and its customer base.” (See Popyork, LLC v 80 Ct. St. Corp., 23 AD3d 538, 539 [2d Dept 2005]; see also Sy Jack Realty Co. v Pergament Syosset Corp., 27 NY2d at 453; Nanuet Natl. Bank v Saramo Holding Co., 153 AD2d at 928-929.)
With few exceptions, however, which will be addressed below, equity has intervened to preserve the leasehold only when notice of the renewal has been given late, but before expiration of the lease term. This court concludes, particularly in light of developed authority under related circumstances of expiration on a conditional limitation, that equitable considerations cannot revive a lease that has expired by its terms in the absence of required notice.
*296 When a lease expires on a conditional limitation because the tenant has failed to cure a breach within the time specified by the lease, a court is “powerless to revive the expired lease.” (See Graubard Mollen Horowitz Pomeranz & Shapiro v 600 Third Ave. Assoc., 93 NY2d 508, 513 [1999]; Post v 120 E. End Ave. Corp., 62 NY2d 19, 24-25 [1984]; see also R.P.S.P. Pasta Corp. v Tor Val., 229 AD2d 783, 784 [3d Dept 1996]; Titleserv, Inc. v Zenobio, 210 AD2d 311, 313-314 [2d Dept 1994].) That is the holding of First Natl. Stores v Yellowstone Shopping Ctr. (21 NY2d 630, 637 [1968]), and the genesis of the “Yellowstone injunction” (see Post v 120 E. End Ave. Corp., 62 NY2d at 24-25).
“A Yellowstone injunction prevents expiration of the lease by tolling the running of the cure period, a necessary precondition to terminating the lease.” (Id. at 26.) “An application for a Yellowstone injunction . . . must be made prior to the termination of the lease, as courts cannot reinstate a lease after the lapse of the time specified to cure a default.” (Goldstein v Kohl’s, 16 AD3d 622, 623 [2d Dept 2005]; see also Retropolis, Inc. v 14th St. Dev. LLC, 17 AD3d 209, 209-210 [1st Dept 2005].)
As a tenant might seek a Yellowstone injunction to toll the running of a cure period, so might a tenant seek “a preliminary injunction tolling its time to exercise the renewal option in its lease.” (See Nobu Next Door, LLC v Fine Arts Hous., Inc., 4 NY3d 839, 840 [2005]; see also Waldbaum, Inc. v Fifth Ave. of Long Is. Realty Assoc., 85 NY2d 600, 607 [1995]; Syndicom Corp. v Shoichi Takaya, 275 AD2d 676, 677 [1st Dept 2000]; Titleserv, Inc. v Zenobio, 210 AD2d at 314.) Once the temporary restraint is lifted, the tenant may, and presumably must, act to exercise the option “within the time remaining for such exercise.” (See Syndicom Corp. v Shoichi Takaya, 275 AD2d at 678.)
There does not appear to be any published decision that expressly addresses the clear implication of Yellowstone and its progeny when equity is invoked to revive a lease that has expired by its terms in the absence of a notice to renew. But in Chock Full O’Nuts Corp. v NRP LLC I (11 AD3d 385 [1st Dept 2004]), the tenant failed to notify the landlord prior to the renewal date of its intention to exercise the renewal option, and “it was only subsequent to the lease’s expiration that it attempted to revive the option on equitable grounds” (id. at 386). Citing Yellowstone, the First Department held that “resort to equity after the lease had expired was necessarily unavailing.” *297 (Id.) The Court went on to state, however, that “[i]n any case, no triable issue was raised, as to whether there were equitable grounds.” (Id.)
In Matter of Bart-Rich Enters., Inc. v Boyce-Canandaigua, Inc. (8 AD3d 1119 [4th Dept 2004]), the Fourth Department held that “[a] tenant who never provides written notice and does not allege that the landlord waived that requirement is not entitled to equitable relief’ (id. at 1120). The Court cited only the Second Department’s much earlier decision in McVey v Simone (73 AD2d 959 [2d Dept 1980]). There, the Court noted that the tenant had “never exercised her option in the manner required by the lease” and did not claim that the landlord “expressly waived written notice.” (Id. at 960.) “This leaves her with no recourse at law.” (Id.) Neither the Fourth Department nor the First Department cites Yellowstone or similar authority. (See also Pepe v Stock, 24 AD3d at 528; 95 E. Main St. Serv. Sta. v H & D All Type Auto Repair, 162 AD2d 440, 440-441 [2d Dept 1990]; but see J. DeBenedictis & Sons Bldg. Corp. v Lindon, 143 Misc 2d 146, 148 [Mount Vernon City Ct 1989].)
In cases where the Court articulated equitable considerations in finding a renewal of the lease, notwithstanding expiration, the lease itself failed to specify a time or method for exercising the option (see Bench ‘N’ Gavel Rest. v Time Equities, 169 AD2d 755 [2d Dept 1991]; Kelly v Varnes, 52 App Div 100 [4th Dept 1900]), or the lease was ambiguous as to when notice was to be given, and the Court does not clearly hold that the notice was given after expiration (see Hunt v Carlson, 136 AD2d 853 [3d Dept 1988]; Bank of N.Y. v Ulster Hgts. Props., 114 AD2d 431 [2d Dept 1985]).
Under the circumstances here, therefore, where the lease clearly specifies the time and manner in which notice of renewal is to be given, and that notice is not given before the expiration of the lease, equitable considerations cannot serve to revive and renew respondents’ tenancy.
Waiver of Notice to Renew
Respondents’ alternate contention is that petitioner waived the notice to renew by demanding and accepting rent at the amount specified by the lease as rent for the first year of the renewal term.
“A lessee, who enters into possession of demised premises under a lease for a fixed term with the privilege of extending it by giving written notice to the lessor, and continues in possession after the *298 fixed term has expired, paying the rent thereafter as it becomes due, thereby elects to exercise the option for an extension of the term, although no express notice of such election is given ... In such a lease the requirement of a written notice may be waived by the parties and a waiver will be implied when the lessee remains in possession and pays the rent to the lessor.” (Probst v Rochester Steam Laundry Co., 171 NY 584, 587 [1902]; see also Long v Stafford, 103 NY 274, 283 [1886].)
Articulated as a waiver, the rule has been applied primarily when the landlord is seeking to hold the tenant to the renewal term, often with the justification that “the provision for . . . notice was a provision for the landlord’s benefit, which landlord could waive.” (See United Mut. Life Ins. Co. v ICBC Corp., 64 AD2d 506, 509 [1st Dept 1978]; see also Shalet v Stoloff, 135 App Div 376, 379 [1st Dept 1909]; Panagiotopoulos v Ricardelli, 5 Misc 3d 129[A], 2004 NY Slip Op 51288[U], *1 [App Term, 2d Dept]; Finn v Krieger Shoe Co., 93 Misc 83, 87 [App Term, 2d Dept 1915]; I.B. Realty Corp. v Holland Furnace Co., 33 Misc 2d 419, 420-421 [Orange County Ct 1962]; but see Long v Stafford, 103 NY at 283 [“(w)hether the requirement of written notice was for the benefit of the lessees only, or for the benefit of both lessor and lessees”].) So viewed, a landlord’s waiver might be precluded by a no-waiver provision in the lease. (See 510 Joint Venture v Solcoor, Inc., 177 AD2d 465, 466-467 [2d Dept 1991].)
The waiver rule, when relied upon by the landlord, is consistent with the common-law rule that a “tenant holds over the term at his peril; and the owner of the premises may treat him as a trespasser or as a tenant for another year upon the terms of the prior lease, so far as applicable.” (See Schuyler v Smith, 51 NY 309, 315 [1873]; see also City of New York v Pennsylvania R.R. Co., 37 NY2d 298, 300-301 [1975]; Herter v Mullen, 159 NY 28, 33 [1899]; Watterman v Falk, 11 Misc 2d 1074, 1074 [App Term, 2d Dept 1958].) “The option of election to remain in possession of leased premises is not given to the tenant . . . [T]he option of election is given [to] the landlord and to him alone.” (Patrikaris v Cavadas, 83 NYS2d 385, 386-387 [Schenectady County Ct 1948], citing Haynes v Aldrich, 133 NY 287 [1892].) When the landlord accepted rent for several months, “[a]bsent proof of any other understanding between the parties,” it was “presumed that the lease was renewed for another year at the same terms.” (Watterman v Falk, 11 Misc 2d at 1074; see also Kennedy v Kenderian, 187 Misc 861, 863-864 *299 [Albany City Ct 1946]; Irish Am. Loan Assn. v Stanfield, 182 Misc 363, 366 [Sup Ct, Erie County 1943].)
Notwithstanding the landlord-oriented rationale of the waiver rule and its consistency with the landlord-favorable common-law holdover rule, at least two trial courts (see Manocherian v Williams, 118 Misc 2d 212, 214-215 [Civ Ct, NY County 1983]; Marathon Machine & Tool Co. v Voelcker Bros., 83 NYS2d 67, 69 [Sup Ct, NY County 1948]) and two appellate courts (see Hausauer v Dahlman, 18 App Div 475, 480 [4th Dept 1897], affd 163 NY 567 [1900]; Feldman v Sheridan Warehouse Coop. Corp., 247 App Div 82, 84 [4th Dept 1936]; but see Harlington Realty Corp. v Farmiloe-Burke Corp., 120 Misc 2d 411, 411 [App Term, 2d Dept 1983]), have applied the waiver doctrine at the instance of tenants seeking to hold the landlord to the renewal term. But in one of the appellate cases, “[t]he lease did not specify when or how [the tenant] should give notice” and “the renewal paragraph was ambiguous and undoubtedly so understood from the beginning by both parties” (see Feldman v Sheridan Warehouse Coop. Corp., 247 App Div at 84), and in the other, the landlord did not have the right to grant the renewal when the time arrived for the tenant’s exercise of the option, and the landlord “promised ... to extend the term” if it obtained the right to do so (see Hausauer v Dahlman, 18 App Div at 480).
Assuming, moreover, that the waiver doctrine could have been used by a tenant to hold the landlord to the renewal term when such circumstances were not presented, it may not have survived the enactment in 1959 of Real Property Law § 232-c. That statute changed the common-law holdover rule by “preventing] a landlord from exercising his common-law option to declare a new term of longer than a month where there is a holdover tenancy.” (See 28 Mott St. Co. v Summit Import Corp., 34 AD2d 144, 146 [1st Dept 1970], affd 28 NY2d 508 [1971].)
“[I]f the landlord shall accept rent for any period subsequent to the expiration of [the] term, then, unless an agreement either express or implied is made providing otherwise, the tenancy created by the acceptance of such rent shall be a tenancy from month to month commencing on the first day after the expiration of such term.” (Real Property Law § 232-c [emphasis added].)
The most recent appellate authority clearly indicates, at least when a lease expires in the absence of notice to renew prior to *300 expiration, that the nature and duration of the tenancy resulting from continued possession, and payment and acceptance of rent, is to be determined within the contours of Real Property Law § 232-c. In United Mut. Life Ins. Co. v ICBC Corp. (64 AD2d 506 [1st Dept 1978]), the tenant failed to give notice of renewal prior to expiration of the lease, but remained in possession and “paid the increased rent provided for in the lease for the renewal term” (id. at 507). The landlord was seeking to charge the tenant for rent for the balance of the renewal term, and the Court, applying section 232-c, held that “whether the parties made an agreement to renew the lease . . . presented] a question of fact” requiring trial. (See id. at 509.) “[T]he fact that the tenant failed to give the nine-month notice of intention to renew [did not] necessarily defeat the landlord’s claim, for the provision for that notice was a provision for the landlord’s benefit, which [the] landlord could waive.” (Id.)
Agreement Either Express or Implied
Respondents do not contend that petitioner expressly agreed to renewal of the lease, and on the record on this motion “there is no compelling evidence of an implied agreement to extend the lease.” (See Matter of Joyous Holdings v Volkswagen of Oneonta, 128 AD2d 1002, 1005 [3d Dept 1987].) Respondents have not established prima facie that their tenancy is other than month to month.
“[T]he mere agreement to an increase in rent, where the duration and nature of the tenancy were otherwise governed by operation of law, does not constitute a new tenancy.” (Bay W. Realty Co. v Christy, 61 Misc 2d 891, 895 [Civ Ct, NY County 1970]; see also A. Stern & Co. v Avedon & Co., 194 App Div 433, 435-436 [1st Dept 1920], affd 231 NY 546 [1921].) Indeed, that is the clear import of United Mut. Life Ins. Co. v ICBC Corp. (64 AD2d 506 [1978]).
And, since a month-to-month tenancy pursuant to Real Property Law § 232-c continues on the terms of the expired lease (see City of New York v Pennsylvania R.R. Co., 37 NY2d 298, 300-301 [1975]; Lakeside Plaza v Impala Press, 237 AD2d 334, 334 [2d Dept 1997]), petitioner’s request for a repair required by the lease likewise does not compel the conclusion that the lease has been renewed.
Consistent with section 232-c and related case law, the lease here expressly provides that, if the tenant should continue in possession beyond the expiration date, and if “the Lease is not renewed or a new lease is not entered into between the par *301 ties,” a month-to-month tenancy will result “upon all of the terms set forth in [the] Lease,” except that the rent is to be modified. (Rider attached to and forming part of store lease 11 47.) The rent during the month-to-month tenancy is to be the higher of two amounts, one to be determined by application of a stated formula, the other to be petitioner’s good faith estimate of “then market rental value.” (Id.)
Finally, petitioner asserts, and respondents essentially acknowledge, that respondents are not in compliance with the insurance requirement of the lease. Since the court has, in effect, concluded that respondents’ right to continue in possession is not to be determined by the option provision in the lease, it is unnecessary to decide whether that noncompliance would have itself precluded effective exercise of the option. The court notes, however, that “there is no necessary inconsistency in treating a party as a tenant by accepting the rent with knowledge of a violation of the lease, but in also refusing to extend the lease for a further term.” (See Jefpaul Garage Corp. v Presbyterian Hosp. in City of N.Y., 61 NY2d 442, 448 [1984].)
As already noted, there is no evidence on this motion of any discussion concerning renewal, either before or after expiration of the lease. Mr. Sheppard does not explain why respondents did not provide notice of renewal as and when required by the lease, or why respondents’ intentions were not stated when the question was raised, at least implicitly, by petitioner’s “demand” for rent at the increased amount or when rent payments were later refused. For petitioner’s part, there is no explanation for its “demand” for rent at the renewal rate, which is undisputed, nor any statement as to its understanding as to the status of respondents’ continued tenancy.
The court also notes that, even though equitable considerations cannot revive the expired lease for the renewal term, they are certainly relevant to a determination as to the period of time respondents may remain in the premises, assuming petitioner is correct about the status of the tenancy. (See City of New York v Falcone, 160 Misc 2d 234, 235 [App Term, 2d Dept 1994]; New York City Economic Dev. Corp. v Harborside Mini Stor., Inc., 12 Misc 3d 1155[A], 2006 NY Slip Op 50904[U], *13 [Civ Ct, Kings County].) Moreover, the factors that would support equitable assessment also provide a context for the parties’ words and actions, providing insight into what they could, and should, have reasonably understood.